USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 94-1749 ERNST & YOUNG, Plaintiff, Appellant, v. DEPOSITORS ECONOMIC PROTECTION CORPORATION, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Jerome G. Snider, with whom Daniel F. Kolb, Davis Polk & _________________ _______________ _____________ Wardwell, Peter J. McGinn, John E. Bulman, Tillinghast, Collins & ________ _______________ ______________ ______________________ Graham, Kathryn A. Oberly, and J. Andrew Heaton were on brief, ______ __________________ ________________ for appellant. Leonard Decof, with whom Howard B. Klein and Decof & Grimm _____________ _______________ _____________ were on brief, for appellees. _________________________ January 25, 1995 _________________________ SELYA, Circuit Judge. Plaintiff-appellant Ernst & SELYA, Circuit Judge. ______________ Young (E&Y), an accounting firm, asked the United States District Court for the District of Rhode Island to strike down R.I. Gen. Laws 42-116-40 (1993) (the Depco Act) on constitutional grounds. The district court dismissed the complaint because the controversy lacked ripeness, and, alternatively, because it invited abstention. E&Y appeals. We affirm. I. BACKGROUND I. BACKGROUND In January 1991, Bruce Sundlun, newly inaugurated Governor of Rhode Island, proclaimed a banking emergency precipitated by the collapse of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC), a firm that had insured deposits at no fewer than 45 Rhode Island-based financial institutions.1 Since those institutions could not operate legally without deposit insurance, see R.I. Gen. Laws 19-11-9, ___ the Governor closed them. The lockout provoked a financial crisis, preventing depositors from withdrawing their funds and causing consternation in a myriad of other ways. Over time, many of the affected institutions obtained insurance from sources such as the Federal Deposit Insurance Corporation, and resumed operations. Others were absorbed by insured entities. In the end ten financial  ____________________ 1The Rhode Island General Assembly chartered RISDIC in 1969 as a private deposit-insurance corporation. It began operations in 1971, subject only to state, not federal, regulation. Depositors tended to view RISDIC as a state-sponsored enterprise, and its proprietors the banks and credit unions that dealt with it did nothing to dispel this misconception. 2 institutions were unable to reopen. These financial institutions had something in common: each of them had followed uncommonly adventurous lending practices, and had become insolvent. They were all placed into conservatorship. The Rhode Island General Assembly created a public corporation, the Depositors Economic Protection Corporation (Depco), to act as the receiver, manage the failed banks' estates, marshal and liquidate their assets, repay depositors, and seek recovery from those responsible for the fiasco.2 In addition, Depco served as the receiver for RISDIC. A special state commission charged with investigating the banking crisis found no shortage of miscreants. The commission assigned blame, inter alia, to former officers and _____ ____ directors of the failed institutions, certain large borrowers, the state Department of Business Regulation, the General Assembly, and a former governor. The commission reserved some of its most stinging criticism for RISDIC and those persons who occupied prominent positions in the RISDIC hierarchy. The commission included E&Y, which had provided accounting services to RISDIC and to many of its insureds, as among the parties deserving special opprobrium. The banks' collapse proved to be a depositor's nightmare but a lawyer's dream, spawning a plethora of lawsuits. For the most part, the depositors' and creditors' suits were  ____________________ 2As of the time the parties' briefs were filed, Depco had managed to repay 93% of the affected depositors and to repay 90% or more of the amounts owed to the remaining depositors. 3 consolidated in a series of master complaints (one for each failed institution) docketed in the state superior court. Then, in early 1992, Depco and other plaintiffs filed a civil action in superior court against E&Y and sundry other defendants. In that suit, the plaintiffs charged E&Y with negligence and professional malpractice. Among other things, they alleged that E&Y issued unqualified (or insufficiently qualified) audit opinions to RISDIC and a number of RISDIC-insured institutions despite obvious patterns of pervasive lending irregularities and other clear portents of impending financial disaster. In July of 1993, the General Assembly revised state law as it pertained to the RISDIC cases by passing the Depco Act, Pub. L. 1993, ch. 85. The Act provides that potentially responsible parties who in good faith achieve judicially approved settlements with Depco will not be liable for contribution to other joint tortfeasors; and that, if a putative defendant settles with Depco on this basis, the potential liability of other joint tortfeasors will be reduced only by the dollar amount of the settlement, not by the settling party's pro rata share of the aggregate liability.3  ____________________ 3The statute reads in relevant part: Notwithstanding any provisions of law to the contrary, a person, corporation, or other entity who has resolved its liability to the Rhode Island Depositors' Economic Protection Corporation, the receiver of Rhode Island Share and Deposit Indemnity Corporation or the receiver of any state-chartered financial institution in judicially-approved good faith settlement shall not be liable for claims for 4 The Act transmogrifies the law of contribution for purposes of the RISDIC cases. Prior to its passage, a non- settling defendant in a negligence action including a non- settling defendant in a RISDIC case could, if found liable, seek contribution according to proportionate fault from all other joint tortfeasors, save only those who had entered settlements that explicitly released all claims against all potentially responsible parties for the settling tortfeasor's proportionate share of the overall liability. See R.I. Gen. Laws 10-6-7, ___ 10-6-8, 10-6-11 (1993). In other words, prior law ensured that, if a joint tortfeasor were held responsible for (and paid) more than its ratable share of damages, it could seek contribution from other joint tortfeasors who had carried less than their fair share of the load. Under the Depco Act, however, a non-settling tortfeasor can be held liable for more than its pro rata share of damages, yet find that it has no remaining right of contribution as to some (or, conceivably, all) of the overage paid. E&Y did not go quietly into this dark night. It  ____________________ contribution or equitable indemnity regarding matters addressed in the settlement. Such settlement does not discharge any other tortfeasors unless its terms so provide, but it reduces the potential liability of such joint tortfeasors by the amount of the settlement. R.I. Gen. Laws 42-116-40 (1993). The idea behind the statute is scarcely original; the Depco Act is modeled on the special contribution provisions contained in the Comprehensive Environmental Response Compensation & Liability Act (CERCLA), see ___ 42 U.S.C. 9613(f)(2) - (3) (1988); see also United States v. ___ ____ _____________ Cannons Eng'g Corp., 899 F.2d 79, 91-92 (1st Cir. 1990) _____________________ (explaining operation of CERCLA contribution provisions). 5 promptly sued in the federal district court,4 seeking a declaration that the Depco Act, on its face and as applied to E&Y, transgresses the Federal Constitution. Specifically, E&Y urged the court to find that the Act violates the due process and equal protection clauses, and that it constitutes an unlawful bill of attainder. In its complaint, E&Y makes various allegations designed to highlight the ostensible unfairness of the legal predicament it now faces. Stripped of animadversions, the complaint brands the Depco Act as special legislation drafted for the specific purpose of depriving E&Y of preexisting substantive rights in order to intimidate E&Y and thereby force a lucrative settlement of Depco's negligence action.5 Depco's strategy, E&Y alleges, is to reach early settlements with most potentially responsible parties, limited to the face value of their respective liability insurance policies, but to treat E&Y as a "deep pocket" from whom a huge settlement can be extracted. E&Y asserts that the doubts surrounding the viability of this strategy, and particularly the profound uncertainties about the Act's constitutionality, are currently imposing a substantial hardship on E&Y in at least two ways. First, the situation  ____________________ 4E&Y's complaint named Governor Sundlun, Depco, and Depco's executive director as defendants. For simplicity's sake, we refer to the defendants, collectively, as "Depco." 5E&Y adds various details designed to bolster this claim, including a charge that Depco's specially retained trial counsel lobbied for passage of the Act, telling legislators that changing the law of contribution greatly improved Depco's bargaining position vis-a-vis E&Y. 6 creates coercive pressure on E&Y to settle the pending state court suit. Second, it deprives E&Y of the ability adequately to appraise its potential exposure. The defendants moved to dismiss the complaint for want of subject matter jurisdiction on the ground that the case lacked ripeness,6 and, as a back-up, invoked several abstention theories. The district court referred the motion to a magistrate judge, see Fed. R. Civ. P. 72(b), who recommended that the ___ complaint be dismissed for want of subject matter jurisdiction, or, alternatively, in the exercise of the court's discretion. E&Y objected to the magistrate's report. On de novo review, the __ ____ district court characterized the complaint as unripe and dismissed it under Rule 12(b)(1). See E&Y v. Depco, 862 F. Supp. ___ ___ _____ 709 (D.R.I. 1994). Judge Boyle stressed that since E&Y would only be damaged by the Depco Act if a series of contingent events occurred in the future, it failed satisfactorily to demonstrate that "it has sustained or is immediately in danger of sustaining a direct injury." Id. at 714-15. The judge went on to observe ___ that, were the case ripe, comity and federalism concerns would nonetheless prompt him to abstain.7 See id. at 715-16 (citing ___ ___  ____________________ 6On appeal, Depco advances the closely related argument that E&Y lacks standing. Despite their natural imbrication, these asseverations are distinct; the standing doctrine is concerned with who may bring a particular suit, while the ripeness doctrine is concerned with when a party may bring suit. Because we hold that the controversy is not ripe, we eschew any consideration of whether E&Y also lacks standing. 7Judge Boyle also expressed his view that the Depco Act did not comprise a bill of attainder. See E&Y, 862 F. Supp. at 716- ___ ___ 17. The court's statements on this score are gratuitous, and we 7 Younger v. Harris, 401 U.S. 37 (1971)). This appeal ensued. _______ ______ II. STANDARDS OF REVIEW II. STANDARDS OF REVIEW A district court's determination that it lacks subject matter jurisdiction because the case before it is not ripe usually presents a question of law reviewable de novo in the __ ____ court of appeals. See Broughton Lumber Co. v. Columbia River ___ _____________________ ______________ Gorge Comm'n, 975 F.2d 616, 618 (9th Cir. 1992), cert. denied, ____________ _____ ______ 114 S. Ct. 60 (1993); Shea v. Rev-Lyn Contracting Co., 868 F.2d ____ _______________________ 515, 517 (1st Cir. 1989); Felmeister v. Office of Atty. Ethics, __________ _______________________ 856 F.2d 529, 535 n.8 (3d Cir. 1988). This case is no exception to the rule. The standard of review that applies to a district court's discretionary decision to withhold a declaratory judgment is more problematic. Some courts afford plenary review, but others affirm unless the trial court's decision constitutes an abuse of discretion. Compare, e.g., Allstate Ins. Co. v. _______ ____ ___________________ Mercier, 913 F.2d 273, 277 (6th Cir. 1990) (utilizing plenary _______ review) and Gayle Mfg. Co. v. Federal Sav. & Loan Ins. Corp., 910 ___ ______________ ______________________________ F.2d 574, 578 (9th Cir. 1990) (same) with, e.g., Christopher P. ____ ____ ______________ v. Marcus, 915 F.2d 794, 802 (2d Cir. 1990) (utilizing abuse of ______ discretion standard), cert. denied, 498 U.S. 1123 (1991), and _____ ______ ___ Kunkel v. Continental Cas. Co., 866 F.2d 1269, 1273 (10th Cir. ______ ____________________ 1989) (same). We have captured a middle ground, expressing our preference for a standard of independent review when passing upon a trial court's discretionary decision to eschew declaratory  ____________________ express no opinion on them. 8 relief. This standard encourages the exercise of independent appellate judgment if it appears that a mistake has been made. See El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 492 (1st Cir. ___ ____________ _______________ 1992); National R.R. Passenger Corp. v. Providence & Worcester ______________________________ _______________________ R.R. Co., 798 F.2d 8, 10 (1st Cir. 1986). Thus, independent ________ review invokes a standard more rigorous than abuse of discretion, but less open-ended than de novo review. __ ____ III. THE DECLARATORY JUDGMENT ACT III. THE DECLARATORY JUDGMENT ACT The Declaratory Judgment Act, 28 U.S.C. 2201-2202 (1988), empowers a federal court to grant declaratory relief in a case of actual controversy. The Act does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis. See Franchise Tax Bd. v. ___ __________________ Construction Laborers Vacation Trust, 463 U.S. 1, 15-16 (1983). ____________________________________ The Declaratory Judgment Act serves a valuable purpose.8 It is designed to enable litigants to clarify legal rights and obligations before acting upon them. See Step-Saver ___ __________ Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649-50 (3d Cir. ________________ __________ 1990) (citing legislative history). Because the Act offers a window of opportunity, not a guarantee of access, the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not. Consequently,  ____________________ 8The Declaratory Judgment Act is mirrored by Fed. R. Civ. P. 57. The statute and the rule are functionally equivalent. See, ___ e.g., 118 E. 60th Owners, Inc. v. Bonner Props., Inc., 677 F.2d ____ _________________________ ____________________ 200, 205 n.8 (2d Cir. 1982) (treating Rule 57 as implementing the remedy authorized by the Act). 9 federal courts retain substantial discretion in deciding whether to grant declaratory relief. As we have stated, the Declaratory Judgment Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." El Dia, 963 F.2d _______ at 493; accord Green v. Mansour, 474 U.S. 64, 72 (1985); Public ______ _____ _______ ______ Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 241 (1952). ____________ __________ Not surprisingly, then, an indigenous jurisprudence has sprouted in the fields where the seeds of declaratory actions are sown. It is not necessary to harvest this jurisprudence today. For present purposes, it suffices to sound a note of caution: the discretion to grant declaratory relief is to be exercised with great circumspection when matters of public moment are involved, see Washington Pub. Power Supply Sys. v. Pacific N.W. ___ __________________________________ _____________ Power Co., 332 F.2d 87, 88 (9th Cir. 1964), or when a request for _________ relief threatens to drag a federal court prematurely into constitutional issues that are freighted with uncertainty, see El ___ __ Dia, 963 F.2d at 494. ___ IV. RIPENESS IV. RIPENESS In the first instance, the district court dismissed E&Y's action due to ripeness concerns. See E&Y, 862 F. Supp. at ___ ___ 713-15. E&Y assigns error. We discern none. A. Examining The Ossature. A. Examining The Ossature. ______________________ In its seminal opinion on the application of the ripeness doctrine in the declaratory judgment context, the Supreme Court explained that the doctrine's basic rationale is to 10 "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott ______ Labs v. Gardner, 387 U.S. 136, 148-49 (1967). While the doctrine ____ _______ has a prudential flavor, a test for ripeness is also mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies, see U.S. Const. art. III, ___ 2; see also Wycoff, 344 U.S. at 242-45. Consequently, although ___ ____ ______ a court may, within stated limits, dismiss declaratory judgment actions in its discretion, a court has no alternative but to dismiss an unripe action. Questions of ripeness that arise incident to challenged governmental actions in the declaratory judgment context are gauged by means of a two-part test. See Abbott Labs, 387 U.S. at ___ ___________ 149. First, the court must consider whether the issue presented is fit for review. This branch of the test typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed. See, e.g., W.R. ___ ____ ____ Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992). The ____________ ___ second branch of the Abbott Labs test requires the court to ____________ consider the extent to which hardship looms an inquiry that typically "turns upon whether the challenged action creates a `direct and immediate' dilemma for the parties." Id. (citation ___ omitted). The relationship between these two parts of the test fitness and hardship has never been precisely defined. Though 11 some commentators have suggested that either of the two showings may suffice to allay ripeness concerns, see, e.g., Laurence H. ___ ____ Tribe, American Constitutional Law 3-10, at 80 (2d ed. 1987), ____________________________ the predominant weight of authority supports the opposite view, see, e.g., Poe v. Ullman, 367 U.S. 497, 509 (1961) (dismissing ___ ____ ___ ______ for lack of ripeness despite the predominantly legal nature of the question presented and the minimal need for an extensive factual record); Cedars-Sinai Medical Ctr., v. Watkins, 11 F.3d __________________________ _______ 1573, 1581 (Fed. Cir. 1993) (holding that a ripe case must meet both prongs of Abbott Labs); see also Erwin Chemerinsky, Federal ___________ ___ ____ _______ Jurisdiction 2.4, at 124 (2d ed. 1994) (deriving examples from ____________ Supreme Court jurisprudence). In line with the majority view, we hold that both prongs of the test ordinarily must be satisfied in order to establish ripeness. In so holding, however, we acknowledge the possibility that there may be some sort of sliding scale under which, say, a very powerful exhibition of immediate hardship might compensate for questionable fitness (such as a degree of imprecision in the factual circumstances surrounding the case), or vice versa.9 We end this segment of our opinion on yet another cautionary note. The ripeness inquiry is often sui generis. ___ _______ Most litigation has idiosyncratic features, and the various integers that enter into the ripeness equation play out quite differently from case to case, thus influencing the bottom line.  ____________________ 9We need not probe this final point, for E&Y has not made a sufficiently strong showing under either of the test's two prongs. See infra Part IV(C). ___ _____ 12 See, e.g., State of Rhode Island v. Narragansett Indian Tribe, 19 ___ ____ _____________________ _________________________ F.3d 685, 693 (1st Cir.), cert. denied, 115 S. Ct. 298 (1994). _____ ______ B. Putting Flesh on the Bones. B. Putting Flesh on the Bones. __________________________ Before determining whether E&Y's initiative passes the Abbott Labs test, we pause to flesh out the test's two parts. ___________ 1. Fitness. We start with bedrock: "the critical 1. Fitness. _______ question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Massachusetts Ass'n of _______________________ Afro-American Police, Inc. v. Boston Police Dep't, 973 F.2d 18, __________________________ ___________________ 20 (1st Cir. 1992) (per curiam); accord Lincoln House, Inc. v. ______ ____________________ Dupre, 903 F.2d 845, 847 (1st Cir. 1990). This conclusion _____ reflects an institutional awareness that the fitness requirement has a pragmatic aspect: issuing opinions based on speculative facts or a hypothetical record is an aleatory business, at best difficult and often impossible. See, e.g., Calif. Bankers Ass'n ___ ____ ____________________ v. Schultz, 416 U.S. 21, 56 (1974) ("This Court, in the absence _______ of a concrete fact situation in which competing associational and governmental interests can be weighed, is simply not in a position to determine [the question presented]."); Socialist _________ Labor Party v. Gilligan, 406 U.S. 583, 587 (1972) (finding sole ___________ ________ remaining issue unripe and dismissing appeal because the record lacks "the sort of proved or admitted facts that would enable [the Court] to adjudicate th[e] claim"). Nevertheless, the raw fact that events have not yet fully unfolded is not always fatal to justiciability. In such straitened circumstances, courts 13 sometimes exhibit a greater willingness to decide cases that turn on legal issues not likely to be significantly affected by further factual development. See, e.g., Pacific Gas & Elec. Co. ___ ____ _______________________ v. State Energy Resources Conserv. & Dev. Comm'n, 461 U.S. 190, ______________________________________________ 201 (1983) (finding fitness for judicial review supported by the "predominantly legal" nature of the question presented); Duke ____ Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 81- _________ __________________________________ 82 (1978) (finding fitness for judicial review supported by the fact that further factual development "would not . . . significantly advance [the judiciary's] ability to deal with the legal issues presented nor aid . . . in their resolution"). 2. Hardship. The second half of the Abbott Labs 2. Hardship. ________ ____________ inquiry focuses on the hardship that may be entailed in denying judicial review. In general, the greater the hardship, the more apt a court will be to find ripeness. See, e.g., Pacific Gas, ___ ____ ___________ 461 U.S. at 201 & n.13. Though the hallmark of cognizable hardship is usually direct and immediate harm, other kinds of injuries occasionally may suffice. For example, if the operation of a challenged statute is inevitable, ripeness is not defeated by the existence of a time delay before the statute takes effect. See Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 ___ ________________________________________ (1974). And, moreover, even when the direct application of a statute is to some degree remote or contingent, its collateral effects may inflict present injuries that, though indirect, are adequate to support a finding of ripeness. Thus, in Duke Power, the plaintiffs, some of whom ___________ 14 resided near a nuclear power plant, sought a declaration as to the unconstitutionality of the Price-Anderson Act (which set a monetary cap on damages recoverable in consequence of nuclear accidents). Even though the Court thought the possibility of a nuclear accident speculative, it nonetheless found the controversy ripe. The Justices reasoned that the statute made feasible the construction of the plant, which, in turn, posed risks (such as fear of an accident, exposure to radiation, and thermal pollution) that would not otherwise exist. See Duke ___ ____ Power, 438 U.S. at 81. In the Court's view, these injuries were _____ sufficient to support a finding of ripeness. See id. at 81-82; ___ ___ see also McCoy-Elkhorn Coal Corp. v. EPA, 622 F.2d 260, 263-65 ___ ____ ________________________ ___ (6th Cir. 1980). Pacific Gas illustrates that, in special circumstances, ___________ an injury sufficient to impute ripeness may also be found when a plaintiff must presently decide to expend substantial resources which may turn out to be wasted, depending on later clarification of the law. There, the Court determined that a group of utilities could challenge a state law imposing a moratorium on the construction of nuclear power plants. See Pacific Gas, 461 ___ ___________ U.S. at 197-200. Noting the long lead time and the millions of dollars that had to be expended simply to proceed to the licensing stage in the course of developing a nuclear power plant, see id. at 201 n.13, the Court envisioned enormous ___ ___ hardship were it to require the industry to chart a course of action without knowing whether the moratorium was valid. 15 Once again, we end with watchful words. A court's assessment of hardship need not be phrased solely in negative terms. The key question involves the usefulness of a declaratory judgment, that is, the extent to which the desired declaration "would be of practical assistance in setting the underlying controversy to rest." Narragansett Tribe, 19 F.3d at 693. ___________________ Hence, courts should not become mired in the frequently sophistic distinction as to whether refusing declaratory relief will actually impose a hardship or merely fail to confer a benefit. C. Applying the Test. C. Applying the Test. _________________ Using Abbott Labs as the compass by which we must ____________ steer, we conclude, as did the district court, that E&Y's claims are unripe. First, the claims are not now fit for federal judicial review.10 Second, postponing an adjudication will not work a substantial hardship.  ____________________ 10State judicial review is, however, in the offing. Shortly before we heard oral argument, Depco asked the state superior court to certify questions anent the constitutionality of the Depco Act to the state supreme court. Depco made the motion in a tort case it had commenced involving the collapse of the Brown University Employees Credit Union, a RISDIC-insured institution. Over E&Y's objection E&Y is a third-party defendant in the suit the superior court granted Depco's motion. The state supreme court received the certified questions, paired them with a strikingly similar set of constitutional issues limned by the Governor in a pending request for an advisory opinion, see R.I. ___ Const. art. X, 3 (authorizing the governor to request such advisory opinions from the state supreme court), and promulgated a consolidated briefing schedule. Although E&Y correctly maintains that announcing a briefing schedule is not tantamount to reaching the merits of the certified questions, it appears likely that the Rhode Island Supreme Court will soon hear oral arguments. 16 1. Fitness. On the fitness prong, E&Y points to the 1. Fitness. _______ fact that its complaint challenges the Depco Act both on its face and as applied. The former claim, it tells us, is quintessentially legal in nature, and, therefore, suitable for immediate judicial review. See, e.g., Pacific Gas, 461 U.S. at ___ ____ ___________ 201; Duke Power, 438 U.S. at 81-82. We believe that this is too __________ simplistic a view, for it focuses narrowly on the claim's susceptibility to resolution and turns a blind eye to the related but equally important matter of whether judicial resolution is appropriate here and now. The notion that disputes which turn on purely legal questions are always ripe for judicial review is a myth. Even when the "legal" emphasis of a particular claim is sufficient to mask gaps in the factual record, a court will find ripeness lacking if the anticipated events and injury are simply too remote to justify contemporaneous adjudication. See Hodel v. ___ _____ Virginia Surface Mining & Reclam. Ass'n, Inc., 452 U.S. 264, 304 ______________________________________________ (1981); Lincoln House, 903 F.2d at 847; Benson v. Superior Court, _____________ ______ ______________ 663 F.2d 355, 360-61 (1st Cir. 1981). Put bluntly, the question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task. Federal courts cannot and should not spend their scarce resources in what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe. See Mass. Ass'n of Afro-American Police, 973 F.2d at 20; Lincoln ___ ____________________________________ _______ 17 House, 903 F.2d at 847; see also Maryland Cas. Co. v. Pacific _____ ___ ____ __________________ _______ Coal & Oil Co., 312 U.S. 270, 273 (1941) (admonishing that a _______________ declaratory action is not ripe unless "the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality"). For this reason, the mere fact that E&Y asserts a challenge to the Depco Act on its face, without more, cannot carry the day. Here, there is very little more: E&Y's claim lacks the needed dimensions of immediacy and reality. The challenge is not rooted in the present, but depends on a lengthy chain of speculation as to what the future has in store. Tracing the links in this chain demonstrates their fragility. In order for E&Y to be harmed by the operation of the statute, these events must come to pass: (1) at least one person, firm, or corporation other than E&Y must admit fault, or be found to have been at fault, and must have caused recoverable damages arising out of the banking crisis;11 (2) that other party must settle with Depco; (3) the settlement must be entered into in good faith and approved by a competent court; (4) under the bargained terms, the settlor must pay less than its pro rata share, measured by relative fault; (5) perhaps most critically, E&Y which, to this  ____________________ 11Depco apparently has reached one settlement that is expressly conditioned on the constitutionality of the Depco Act being upheld by the Rhode Island Supreme Court. See supra note ___ _____ 10. In the settlement papers the settling defendants disclaim any wrongdoing, and Depco agrees not to treat the fact of settlement as an admission of liability. The more widespread this pattern of settlement becomes, the more arduous it will be to fulfill the "other tortfeasor" requirement. 18 date, has steadfastly denied fault must be found to have been negligent, and its negligence must be found to have caused or contributed to the damages; (6) Depco must attempt to collect an amount greater than E&Y's pro rata share of the damages; (7) a court must find E&Y liable for, and order it to pay, the tribute demanded; and (8) E&Y must then seek contribution from one or more of the "underpaying" joint tortfeasors (who, presumably, will interpose the statute as a defense). This is a long string of contingencies so long that E&Y's assertion of fitness for judicial review trips over it and falls. Courts should always be hesitant to answer hypothetical questions. See Poe, 367 U.S. at 503. That hesitancy does not ___ ___ evaporate merely because a suit is couched as a plea for declaratory relief. See, e.g., Aetna Life Ins. Co. v. Haworth, ___ ____ ____________________ _______ 300 U.S. 227, 240-41 (1937) (explaining that courts, in the guise of declaratory judgment, should not issue opinions "advising what the law would be upon a hypothetical state of facts"). The manifold uncertainties that attend this case in its present posture bring to mind this principle: even though the legal question presented by E&Y's facial challenge to the Depco Act is not likely to be placed in sharper focus by further factual development, the claim is unripe because any application of the challenged statute to E&Y depends on serendipitous events that may not occur as anticipated or may not occur at all. The case that E&Y argues is, at this stage, largely hypothetical, and such cases are seldom fit for federal judicial review. Cf. William ___ 19 Shakespeare, Macbeth, act I, sc. iii, ll. 133-34 (1605) _______ (reminding readers that "present fears are [often] less than horrible imaginings"). This recital does not come close to exhausting E&Y's problems on the fitness prong of the Abbott Labs test. Over and ___________ beyond the potential waste of judicial resources that entertaining a remote and speculative claim would risk, there are other telltale signs that a finding of fitness is not warranted here. We mention two such indicators. The first telltale has a prudential cast. Were we to permit E&Y's action to be decided now, we would be setting in motion a constitutional adjudication that not only could have a thunderous impact on important state interests but that might well prove to be completely unnecessary (if, say, E&Y were later found to have exercised due care, or if the parties settled for an amount that did not exceed E&Y's pro rata share of the recoverable damages). Courts should strive to avoid gratuitous journeys through forbidding constitutional terrain. See Poe, 367 ___ ___ U.S. at 502-04; see also El Dia, 963 F.2d at 494 (counselling ___ ____ ______ that "[u]ncertain questions of constitutional law should be addressed only when absolutely necessary"). A second disincentive to a finding of fitness relates to the absence of other parties having a stake in the controversy. E&Y has sued a stage agency and two state officials. See supra note 4. While we do not doubt that these ___ _____ parties will defend the Act's constitutionality, E&Y's suit lacks 20 full adverseness. See generally Narragansett Tribe, 19 F.3d at ___ _________ __________________ 692-93 (discussing adverseness requirement).12 We explain briefly. The real parties in interest are presumably the other joint tortfeasors (if any there be). After all, because tortfeasors are jointly and severally liable under Rhode Island law, Depco can collect the total amount of damages from E&Y regardless of what regime governs tortfeasors' rights of contribution. Thus, Depco's only interest in the Act relates to its efficacy as a negotiating tool. It follows that, if E&Y is harmed at all, the parties most directly adverse to it will be underpaying tortfeasors those who settle for less than their proportionate shares and who would, without the prophylaxis of the Depco Act, face liability to overpaying tortfeasors for contribution. These persons cannot be made parties to this litigation now because there is no way of predicting at this early date who they will be or even if they will exist. Hence, E&Y's action, under current conditions, is incompletely adverse. This is a serious indictment, for a lawsuit that is hobbed in this manner is much less likely to be  ____________________ 12E&Y touts Narragansett Tribe, a case in which we found __________________ disputed issues ripe, as directly applicable precedent. We do not agree. There, unlike in this case, the state's suit fully satisfied the adverseness requirement. See Narragansett Tribe, ___ __________________ 19 F.3d at 692-93. Other distinctions abound; the arguably unripe issues in that case were not of constitutional stature, the public interest favored immediate adjudication, comity was not a problem (as, there, unlike here, the state urged the federal court to proceed), the hardship that would flow from non- adjudication was starkly apparent, and the utility of a prompt decision was more easily discernible. 21 ripe for judicial review.13 See Connecticut Mut. Life Ins. Co. ___ _______________________________ v. Moore, 333 U.S. 541, 549-50 (1948) (considering the absence of _____ affected parties relevant to ripeness). We think it is reasonably plain from what we have said that E&Y's claim, as it now stands, is not only incompletely adverse, but also remote, speculative, premature, and lacking in practical value. These factors, coupled with E&Y's desire to hurry the federal courts toward a tangled constitutional adjudication that may, in the end, prove to be inutile, render its suit inappropriate for immediate judicial review. Ergo, E&Y's challenge fails to satisfy the fitness prong of the Abbott ______ Labs test.14 ____ 2. Hardship. By like token, we do not think that 2. Hardship. ________ E&Y's case passes muster under the hardship prong of Abbott Labs. ___________ E&Y alleges that it is currently suffering two kinds of adverse effects from the Act, namely, increased pressure to settle Depco's suit and an inability to evaluate its exposure therein.  ____________________ 13The absence of affected parties also has implications for the hardship vel non of denying review, see infra Part IV(C)(2). ___ ___ ___ _____ Even if E&Y were to prevail in the instant action, it seems likely that settling joint tortfeasors, not parties here, would be entitled to relitigate the Depco Act's constitutionality in defending subsequent contribution actions brought by E&Y. See ___ NLRB v. Donna-Lee Sportswear Co., 836 F.2d 31, 33-34 (1st Cir. ____ ________________________ 1987) (explaining requirements for collateral estoppel); E.W. ____ Audet & Sons, Inc. v. Fireman's Fund Ins. Co., 635 A.2d 1181, ___________________ ________________________ 1186-87 (R.I. 1994) (similar; elucidating Rhode Island law). 14We have discussed only E&Y's challenge to the constitutionality of the Depco Act on its face. To go further would be supererogatory. Because the facial challenge is unfit for review, it follows a fortiori that the "as applied" challenge _ ________ to a freshly minted statute that has yet to make its maiden voyage is also unfit. 22 These harms are indirect. And although it is true that present indirect effects occasionally may wreak a sufficient hardship to support a finding of ripeness, see, e.g., Pacific Gas, 461 U.S. ___ ____ ____________ at 201, the effects of which E&Y complains are not so pernicious. There is quite a difference between increasing the risk of exposure to radiation, Duke Power, 438 U.S. at 81-82, and ___________ increasing the difficulty of evaluating a money damages claim for settlement purposes. The uncertainty of which E&Y complains in this case arises in the context of bilateral negotiations, not yet under way, in which opposing parties will explore the possibility of settling a hotly disputed case based partly on the expected results of the litigation. That situation presents a type of hardship that is qualitatively different than those displayed in Pacific Gas and Duke Power, for resolving the challenge to the ___________ __________ Depco Act will help the challenger only marginally. Either way, E&Y still will be faced with the incubus of pending litigation. Either way, E&Y still will have to make an evaluative judgment anent the desirability of settlement on various terms a judgment that depends on many factors other than its right to contribution (and, accordingly, on many factors that will not be clarified by an immediate determination of the statute's constitutionality). The usefulness that may satisfy the hardship prong of Abbott Labs is not met by a party showing that it has ___________ the opportunity to move from a position of utter confusion to one of mere befuddlement. 23 This is not to deny that a declaratory decree might have some utility. If the declaratory action proceeds to a conclusion, the parties will obtain an additional piece of information that will help them to determine a settlement strategy. The point, however, is that E&Y though it will be better informed still will not be spared the need to make the very sort of evaluative judgment that it tells us it is striving to avoid. What is more, E&Y still will not control its own destiny in respect to settlement, for Depco might (or might not) be willing to settle on E&Y's terms, and other tortfeasors might (or might not) leave themselves open to contribution claims, regardless of whether the declaratory judgment action proceeds. The limited utility of the judgment that E&Y seeks here is highlighted by the fact that the "value" of a case for settlement purposes is always a moving target. Phrased another way, settlement value is at best an estimate, subjective in nature, reflecting the worth that the parties themselves, for myriad reasons, attach to their case. See Mathewson Corp. v. ___ ________________ Allied Marine Indus., Inc., 827 F.2d 850, 855 (1st Cir. 1987). ___________________________ It follows inexorably that the settlement value of Depco's claim against E&Y will not be determined by the incidence of rights of contribution alone. See generally Note, Private Settlement as ___ _________ ______________________ Alternative Adjudication: A Rationale for Negotiation Ethics, 18 ________________________ __________________________________ U. Mich. J. L. Ref. 503, 515 n. 16 (1985) (explaining that one cannot "presum[e] that projected legal rights are the principal _____ determinants of negotiated agreements. . . . [O]ther 24 considerations incident to bargaining power, such as relative financial strength and eagerness to avoid trial, are often vitally important to both the process and ultimate content of private settlements"). Because settlement evaluations typically "are the product of intangible criteria which defy quantification," Mathewson, 827 F.2d at 855, the present _________ uncertainty will only be lessened somewhat, not avoided, should the action proceed.15 Of course, a litigant's plaints of hardship cannot be assessed in a vacuum. Rather, a claim of hardship demands an assessment of the complainant's position in light of all the attendant circumstances. See State Farm Mut. Auto. Ins. Co. v. ___ _______________________________ Dole, 802 F.2d 474, 479 (D.C. Cir. 1986) (noting that application ____ of Abbott Labs is not "a matter of weaving complicated legal ___________ distinctions divorced from reality," but, rather, requires the exercise of "practical common sense") (internal quotation marks omitted), cert. denied, 480 U.S. 951 (1987); cf. Narragansett _____ ______ ___ ____________ Tribe, 19 F.3d at 692-93 (explaining that the inquiry into _____ adverseness likewise requires an assessment of all the attendant  ____________________ 15It perhaps bears noting that the lack of certitude both helps and hurts E&Y. On one hand, the uncertainty admittedly generates pressure on E&Y to pay more by way of settlement. But on the other hand, the uncertainty also encourages Depco to settle for less than it would demand if it knew beyond any peradventure of doubt that the Act would withstand constitutional scrutiny. By the same token, a resolution of the constitutional question would cut both ways. If a court upholds the Depco Act, E&Y probably will be faced with the prospect of paying more for a release, whereas, if a court invalidates the Act, E&Y probably will be able to pay less. This shifting array of possibilities, tilting first in one direction and then in the other, further dilutes E&Y's claim of an intolerable hardship. 25 circumstances). Here, three facts soften the sharp edges of E&Y's professed hardship, and, therefore, counsel restraint. First, the contingent nature of E&Y's claim has implications for hardship as well for fitness. Given the stretched chain of events that must transpire before the Act can harm E&Y, and the speculative nature of many of those events, we remain unconvinced either that E&Y's ability to negotiate is unfairly handicapped or that its ability to settle will be substantially enhanced by an immediate decision about the constitutionality of the Act. Second, E&Y is not without other options. Proceedings are underway in the state court that offer a vehicle for the expedited constitutional adjudication that E&Y seeks, unaccompanied by the disadvantages that deter us in this case. See supra note 10. E&Y is already a party to the ___ _____ underlying state-court litigation and can, if it chooses to do so, participate in the proceedings before the Rhode Island Supreme Court. Finally, as some other defendants reportedly have done, E&Y can enter into negotiations with Depco aimed at fashioning a settlement that is contingent on an adjudication of the Act's constitutionality. See supra note ___ _____ 11. In sum, the Depco Act does not work a sufficient hardship, gauged by present effects, to justify a finding of ripeness. Though E&Y may feel some discomfiture over the threatened impairment of its anticipated right to contribution, the burden of which it complains is for the most part indigenous 26 to the litigation process, and, thus, it cannot be made weightless by the desired declaratory relief. V. CONCLUSION V. CONCLUSION We need go no further.16 E&Y yearns for the blossom when only the bud is ready. Because its challenge to the constitutionality of the Depco Act satisfies neither the fitness nor the hardship prong of the Abbott Labs test, it is not yet ____________ ripe for federal judicial review. Accordingly, the district court's dismissal of E&Y's complaint for lack of subject matter jurisdiction must be Affirmed. Affirmed. ________  ____________________ 16Although lack of ripeness is dispositive here, we do not in any way suggest that the lower court's alternate ground for dismissal abstention lacks force. In particular, to the extent that the court's abstention ruling rests on the discretion provided by the Declaratory Judgment Act, see, e.g., El Dia, 963 ___ ____ ______ F.2d at 493-95, it appears fully sustainable. As we have indicated, the constitutional questions presented by a challenge to the Depco Act are of great import to Rhode Island, and lie at the core of the massive litigation that is proceeding glacially in its court system. Even if no individual abstention doctrine requires federal courts to forgo review a matter on which we do not opine the comity and federalism concerns that animate the various doctrines strongly suggest that dismissal of E&Y's declaratory action mirrors the course of prudence. 27