**NATIONAL RAILROAD PASSENGER CORPORATION d/b/a Amtrak, Plaintiff, Appellant,**

**v.**

**PROVIDENCE AND WORCESTER RAILROAD COMPANY and Capital Properties, Inc., Defendants, Appellees.**

No. 86–1055.

United States Court of Appeals, First Circuit.

Argued June 2, 1986.

Decided Aug. 11, 1986.

Richard M. Peirce, with whom Bruce G. Tucker, Robert P. Landau and Roberts, Carroll, Feldstein & Tucker, Inc., Providence, R.I., were on brief, for plaintiff, appellant.

Michael P. DeFanti, with whom Gerald J. Petros and Hinckley, Allen, Tobin & Silverstein, Providence, R.I., were on brief, for defendants, appellees.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

In this appeal involving railroad lines, we are asked to decide whether the District Court properly stayed the plaintiff's action for declaratory relief pending the outcome of a Rhode Island state condemnation proceeding. The District Court shunted the plaintiff's case to a side track on the grounds that the issues raised by the plaintiff's complaint were the same as those before the state court. We agree and affirm.

### Parallel Tracks

The facts of this case are simple and not in dispute. In 1984, the State of Rhode Island, acting through its Department of Transportation, condemned eight parcels of land located in the City of Providence as part of a major redevelopment project. The Department of Transportation, under Rhode Island statutory procedures, paid into the registry of the Providence County Superior Court the sum of $6,110,073.00, an amount asserted to be just compensation for the condemned parcels.

The parties to this lawsuit both assert a right to all or a portion of the condemnation proceeds. The National Railroad Passenger Association (Amtrak) claims to own a fee simple interest in the condemned parcels. Providence and Worcester Railroad Company (P & W) asserts that it possessed "perpetual lease and easement rights" in the condemned parcels before the taking. In October 1984, P & W filed in the state condemnation proceeding a "Petition for Assessment of Damages by Jury," a procedure by which the value of the condemned property and the ownership interests in it would be determined in a jury trial. In August 1985, Amtrak also filed a similar petition in the state court.

Also in August 1985, however, Amtrak filed the present diversity action in federal district court. According to its complaint, Amtrak sought two detailed declaratory judgments to the general effect that (1) under various documents detailing the rights and obligations of Amtrak and P & W, among others, Amtrak need only provide to P & W certain facilities comparable to the ones previously used by P & W on the condemned parcels; and (2) Amtrak owned the "exclusive estates, rights and interests" in the condemned parcels, and P & W's interests were limited to the "reasonable use" of the condemned facilities or any new equivalent facilities built to replace the condemned ones.

P & W moved to dismiss Amtrak's complaint for lack of subject matter jurisdiction, or in the alternative, to stay the federal proceedings pending a determination on the merits in the state court condemnation proceeding. After a hearing, the District Court ordered a stay of Amtrak's federal action on the grounds that the District Court was being asked to adjudicate the same questions presented in the state condemnation proceeding and that the res being contested, i.e., the condemnation award, was subject to the jurisdiction of the state court. Amtrak appeals.

### Getting Out of the Station

At the outset, we must consider whether we have jurisdiction to consider this appeal. While most stay orders do not constitute final appealable decisions within the meaning of 28 U.S.C. § 1291, Amtrak asserts that review of this stay order is appealable because it effectively deprives Amtrak of its right to litigate in the federal courts, either through potential res judicata, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), or unnecessary delay. Additionally, Amtrak asserts the stay order satisfies the "collateral order" appealability test laid out in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and more recently restated in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *see Acton*

* Of the Fifth Circuit, sitting by designation.

*Corp. v. Borden, Inc.*, 670 F.2d 377, 380 (1st Cir.1982) (recognizing the *Cohen* "collateral order" exception to the final decision rule in the context of a stay order).

In *Moses H. Cone,* the Supreme Court recognized that in certain instances, a district court's stay order may operate as a final decision if it would preclude further litigation of the federal claim in the federal courts. When the issues to be resolved in the federal proceeding are identical to those being litigated in state court, "a stay in the federal suit pending resolution of the state suit mean[s] that there [will] be no further litigation in the federal forum; the state court's judgment on the issue [will] be res judicata." 460 U.S. at 10, 103 S.Ct. at 934, 74 L.Ed.2d at 776. The bottom line in such situations is that the stay order is a complete derailment, the equivalent of a dismissal of the federal suit.

When the federal issues are not identical with the state issues and no res judicata problem is presented, a stay order nevertheless may be appealable if the appellant is effectively rendered out of federal court through the indefinite unnecessary delay inherent in the stay order. *See, e.g., American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1523-24 (11th Cir.1984).

Amtrak also asserts that a stay order may be appealable if it satisfies the *Cohen* "collateral order" test. That test has been formulated recently to encompass a "small class" of orders that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Moses H. Cone,* 460 U.S. at 11-12, 103 S.Ct. at 934-35, 74 L.Ed.2d at 777, *quoting Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357-58 (1978) (footnote omitted).

■ For undoubtedly tactical reasons, P & W concedes the appealability of the District Court's stay order on the grounds that the issues presented for federal resolution are identical to those presented in the state court. This concession cannot confer subject matter jurisdiction where it does not otherwise exist, but in this instance, we find ourselves in agreement with P & W. As we explain below, this is a case in which "the inconvenience and costs of piecemeal review on one hand" greatly outweigh the "danger of denying justice by delay on the other." *See Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299, 302 (1950) (footnote omitted).

### The Switchman's Choice

■ Our review of a district court's decision to grant or deny declaratory relief is conducted under a standard slightly more rigorous than abuse of discretion. *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317, 320 (1st Cir.1974) ("scope of review necessarily entails consideration of the reasons underlying dismissal"). Recently we referred to it as "substantial deference." *See Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 309 (1st Cir.1986). Applying this standard, or even under one substantially less deferential, we affirm the District Court's determination that Amtrak's declaratory judgment action should have been stayed pending resolution of the Rhode Island condemnation proceeding.

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held that, even where abstention was inappropriate, a district court might nevertheless decline to exercise its jurisdiction under certain "exceptional" circumstances founded on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d at 498, *quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200, 203 (1952). The Court then listed a series of factors which, while not a "mechanical checklist," *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937, 74 L.Ed.2d at 780, should

be considered by the trial court in deciding whether to stay or dismiss the federal action. As formulated in this Circuit,

> [t]hese factors include (1) which court first assumed jurisdiction over any res or property involved in the action; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; and (5) whether federal law supplies the rule of decision. *Moses H. Cone,* 460 U.S. at 13–26 [103 S.Ct. at 935–43].

*Bergeron v. Estate of Loeb,* 777 F.2d 792, 798 (1st Cir.1985), *cert. denied sub nom. Loeb v. Bergeron,* — U.S. ——, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986). "The weight to be given to any one [*Colorado River*] factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937, 74 L.Ed.2d at 780.

We have emphasized that where the federal action is one for declaratory relief concerning an issue in a pending state action, the third *Colorado River* factor—the desirability of avoiding piecemeal litigation—is entitled to great weight. *See Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 309–10 (1st Cir.1986) (affirming the dismissal of an action for declaratory relief where the Puerto Rican court was "fully capable of adjudicating the facts and deciding the issue"); *see also Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942) ("it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court, presenting the same issues, not governed by federal law, between the same parties").

■ In the present case, Amtrak has craftily worded its complaint seeking declaratory relief in order to distance itself as much as possible from the state condemnation proceeding. Amtrak seeks a declaration that P & W's rights in the condemned facilities and the new replacement facilities are limited to "rights to use" or "reasonable use"; that the new facilities are equivalent to the old facilities; that P & W's "rights" in the new facilities will be equivalent to the rights in the condemned facilities; that Amtrak's only obligation is to provide P & W with the same access to the new facilities that it had to the old, etc. Amtrak also maintains that because it seeks a declaration regarding the parties' interests in the "Terminal Properties"—an area larger than the condemned parcels—its federal claims are somehow distinguishable from and greater than its state claims. But when Amtrak's complaint is read carefully, what it really seeks is revealed: a declaration of the parties' relative interests in the condemned parcels, or the Terminal Properties, as the case may be.[1] The last requested declaration in Amtrak's complaint says it all—Amtrak seeks a declaration concerning the "respective right, title and interest of each of the parties to the Condemned Parcels." As far as we can see down the track, that is the precise issue in the state condemnation suit.

Where the issues to be determined in the federal declaratory relief action are identical to those pending in state court, piecemeal litigation is easily avoided by the District Court staying its hand.

> In our view, it would be unthinkable that every time a state (here, commonwealth) court defendant became dissatisfied with that Court's provisional resolution of some issue and there was diversity of citizenship, it could rush over to the federal courthouse in the hope of obtaining a more favorable determination. Such a practice, if ordinarily permitted, would complicate and fragment the trial of cases, as well as cause friction between state and federal courts.

*Fuller,* 782 F.2d at 309–10.

While avoidance of piecemeal litigation is entitled to great weight in the declaratory judgment context, all but one of the re-

---

**1.** In its brief, Amtrak concedes that the parties' relative interests in the condemned parcels are identical to their relative interests in the Terminal Properties; the only distinction is the "physical size of the real estate affected."

maining *Colorado River* factors also counsel in favor of the District Court's stay. Jurisdiction was first obtained in the Rhode Island courts. The Rhode Island court first assumed (and retains) jurisdiction over the condemnation award. Federal law does not supply the rule of decision.[2] The remaining factor, the convenience of the federal forum, does not seem to have any particular relevance to this case. In a nutshell, *Colorado River* clears the track, heading the case in the direction of the state courthouse.

If, after the state condemnation proceeding is completed, there are any issues in Amtrak's complaint remaining to be resolved by the District Court, then it may take them up at that time. In doing so, it will no doubt benefit, if not be bound by, the judgment rendered in the state proceeding.

#### Conclusion

Just as it makes little railroad sense to lay parallel tracks between stops when one set is sufficient, it makes little judicial sense for parallel litigation to proceed in federal and state courts when one set of proceedings is capable of resolving the parties' disputes. Recognizing this wisdom, the District Court wisely shunted the Federal Limited to a side track so that the State Express could pass. If Amtrak wishes to get back on the main line, it can do so when the track is clear.

AFFIRMED.

---

**2.** Amtrak attempts to exalt the role that federal law will play in determining the outcome of its requested declarations. However, as conceded by Amtrak, any documents having their origin in federal statutes and regulations that might play a role in determining the relative interests of Amtrak and P & W are to be construed under the laws of the District of Columbia, a construction that is just as capably and constitutionally performed by a Rhode Island court as a federal one. Federal law has at best a minimal role in this litigation and certainly will not supply the rule of decision.