# United States Court of Appeals
## For the First Circuit

No. 00-1521

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff, Appellant,

v.

RHODE ISLAND PUBLIC TRANSIT AUTHORITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

John A. Donovan, III with whom Robert H. Gaynor and Sloane & Walsh, LLP were on brief for appellant.
James E. Kelleher with whom Revens, Lanni, Revens & St. Pierre was on brief for appellee.

December 5, 2000

BOUDIN, Circuit Judge. At issue on this appeal is the refusal of the district judge, as a matter of discretion, to entertain a declaratory judgment action brought by the Hartford Fire Insurance Company against the Rhode Island Public Transit Authority ("RIPTA"). Hartford insures RIPTA under a commercial general liability policy. The pertinent background of this appeal are two different actions brought against RIPTA in state court by individuals injured by RIPTA buses, Jean Kelly and Robert Heckman. These cases in turn gave rise to two further lawsuits by Hartford against RIPTA in federal court.

The first accident occurred on June 8, 1995, when a pedestrian, Jean Kelly, was badly injured by a RIPTA bus in Cranston, Rhode Island. She then sued RIPTA in Rhode Island Superior Court. Kelly v. RIPTA, C.A. No. 95-4588 (Providence Super. Ct.) ("the Kelly case"). In an amended complaint incident to a second trial, Kelly charged not only negligence in the operation of the bus (counts I, II, and V), but also negligence by RIPTA in maintaining the bus "turnaround" station where the accident occurred (count III) and breach of common

carrier duty of care (count IV).[1]  RIPTA notified Hartford of Kelly's lawsuit.

The liability policy issued by Hartford to RIPTA contained the usual obligations to pay damages adjudged against RIPTA (the duty to indemnify), and to defend any suit seeking such damages (the duty to defend).  However, a provision in the policy excluded coverage for bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others" of any motor vehicle designed for travel on public roads.

Although Hartford assigned defense counsel to represent RIPTA, it also sent a reservation of rights letter stating that the counts alleging negligent operation of the bus were outside the policy.  It later amended the letter to reserve its right to deny coverage to RIPTA for all of the claims, on the ground that Kelly's injuries ultimately arose out of RIPTA's ownership and use of a motor vehicle.  Trial in the state court began on February 9, 1998, and the jury returned a verdict for RIPTA on the three negligent operation of a motor vehicle counts and for Kelly on the premises maintenance and common carrier counts.

---

[1]Apparently the breach of common carrier duty count did not specify the conduct constituting the breach but, based on the jury's later verdict, it appears that the count was read to embrace the negligent maintenance of premises claim.

On February 20, 1998, Hartford filed a complaint in the federal district court in Rhode Island seeking a declaratory judgment that it owed RIPTA no duty under the policy either to defend or to indemnify RIPTA in the Kelly case. On summary judgment, the district court held that the motor vehicle exclusion clause negated any duty of Hartford to indemnify, regardless of the way the counts were framed, because the accident grew out of the operation of the bus. Hartford Fire Ins. Co. v. RIPTA, C.A. No. 98-094ML, slip op. at 15-16 (D.R.I. Mar. 31, 1999) ("the Hartford (Kelly) case").

However, the district court also held that under Rhode Island precedent, the premises negligence and common carrier counts in the Kelly state-court complaint did trigger Hartford's duty to defend RIPTA. Hartford (Kelly), slip op. at 10-11. The district court held that in Rhode Island, the insurer's duty to defend is tested by mechanically comparing the policy and the pertinent count of the complaint; and if the complaint alleges facts even arguably within the risk coverage in the policy, the insurer has a duty to defend regardless of the actual facts or the case's ultimate outcome. Id. at 7-8. The court deemed the premises negligence and common carrier counts sufficiently distinct from the policy exclusion to impose a duty to defend. Id. at 10-11.

-4-

RIPTA appealed to this court, arguing that Hartford did have a duty to indemnify on the "premises" counts because its original reservation of rights letter had not named those counts as excluded from coverage. This court rejected RIPTA's appeal in a per curiam opinion relying on the reasoning of the district court. Hartford Fire Ins. Co. v. RIPTA, Nos. 99-1525 & 99-1637, 2000 WL 231253 (1st Cir. Feb. 14, 2000) (per curiam). Hartford had taken a cross-appeal challenging the district court's decision that Hartford had a duty to defend in Kelly; but this was dismissed as moot--it appears that the Kelly case had come to an end so that the duty to defend was deemed of no further consequence.

We now turn to the second accident which occurred on February 3, 1996, when a RIPTA bus struck Robert Heckman while he was entering his car on a street in Providence, Rhode Island. In August 1997, Heckman filed a lawsuit against RIPTA in Rhode Island Superior Court. Heckman v. RIPTA, C.A. No. 97-3839 (Providence Super. Ct.) ("the Heckman case"). As amended in January 1999, Heckman's complaint sought to hold RIPTA liable for the driver's negligence in operating the bus (count II), but also charged RIPTA with negligent entrustment (count III), negligent hiring (count IV) and negligent supervision, training and assignment (count V).

-5-

Hartford received notice of the <u>Heckman</u> suit in February 1999 and issued a denial letter advising RIPTA that the <u>Heckman</u> claims were excluded by the policy's motor vehicle exclusion. RIPTA responded by asserting that each of the negligence claims, other than negligent operation, were covered by the policy and that Hartford's coverage position was taken in bad faith. Hartford says that RIPTA threatened to bring suit in federal court if Hartford did not take responsibility for defending the case.

Hartford sent a reservation of rights letter to RIPTA agreeing to provide counsel but reserving its right to disclaim coverage, to withdraw from the defense at any time, and to seek reimbursement from RIPTA for defense costs if the exclusion were found to apply. Hartford then brought the present action in the federal district court on July 9, 1999, seeking a declaration that it had no duty to indemnify in the <u>Heckman</u> case and that it had a right to withdraw from further representation and to recover money spent on the defense to date in that case. <u>Heckman</u> v. <u>RIPTA</u>, C.A. No. 99-326ML, slip op. at 1 (D.R.I. Mar. 14, 2000) (the "<u>Hartford</u> <u>(Heckman)</u> case").

In this new action, Hartford filed a motion for summary judgment which RIPTA opposed on the merits. On March 14, 2000, the district court entered an order "declin[ing] to exercise its

jurisdiction over this declaratory judgment action." Hartford
(Heckman), slip op. at 1. The district court said that under
well-established law, a declaratory judgment action would be
justified if useful to clarify and settle legal relations and to
eliminate uncertainty, insecurity and controversy. It then
continued:

> Since this Court has already ruled on
> this CGL policy and this exclusionary
> provision in Hartford I [i.e., Hartford
> (Kelly)], a declaratory judgment would
> neither clarify the legal relations in issue
> nor afford relief from uncertainty.
> Furthermore, the parties in Hartford I
> appealed this Court's decision and the court
> of appeals affirmed. The purpose of the
> Declaratory Judgment Act is to address
> unresolved disputes. This Court has already
> determined the rights, duties and
> obligations to the parties under this same
> policy. The Court therefore declines the
> invitation to give an encore performance.

Id. at 2-3 (citation omitted).

Hartford now appeals to this court. It concedes that
the decision to entertain a declaratory judgment action under 28
U.S.C. § 2201(a)(1994) is a "discretionary" one, Wilton v. Seven
Falls Co., 515 U.S. 277, 289-90 (1995), but it argues that the
district court has abused its discretion in this case. A
refusal to entertain a suit for declaratory relief is reviewed
for abuse of discretion, id. at 289; DeNovellis v. Shalala, 124
F.3d 298, 313 (1st Cir. 1997), and that concept can encompass

-7-

either an outright mistake of law or a serious misjudgment in the weighing of pertinent considerations, I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998).

On appeal, Hartford says that, because of the differences in the claims made in the Kelly and Heckman state-court actions, the district court erred in thinking that the duty to defend in Kelly--that it had found to exist in Hartford (Kelly)--also established a duty to defend in Heckman. As we have noted, the claims that triggered the duty to defend in the Kelly state-court case were the maintenance of premises and common carrier claims. No such claims have been made in the Heckman case, and the duty to defend in Heckman turns on the presence of negligent entrustment, hiring, supervision, training and assignment.

Because the critical counts in the two cases differ, no one could properly invoke collateral estoppel, often now called issue preclusion, to say that the decision in Hartford (Kelly) controls Hartford (Heckman). See generally Restatement (Second) of Judgments §§ 17, 27 (1982). And RIPTA makes no such claim: at oral argument, it agreed that collateral estoppel did not apply.[2] Further, in the district court, RIPTA stressed that

----

[2]One might think that Hartford (Kelly) could have no preclusive effect on the duty to defend in later cases simply because mootness, through no fault of Hartford, precluded review

-8-

the counts were different although it urged that the reasoning in Hartford (Kelly) would, if applied to the admittedly different counts in Hartford (Heckman), warrant the finding of a duty to defend. This, seemingly, is what the district court meant when it said that it declined to give an "encore," Hartford (Heckman), slip op. at 3. Of course, a prior decision may have precedential effect without being preclusive. Barber v. State Farm Mut. Auto. Ins. Co. (In re Smith), 964 F.2d 636, 638 (7th Cir. 1992) (Posner, J.).

Assuming that the district court correctly understood Rhode Island law in Hartford (Kelly), it might well follow that Hartford had a duty to defend at least some of the counts in the Heckman case. Hartford scarcely troubles to argue to the contrary. Instead, Hartford, so far as we can tell from its brief, would like us to decide that the district court was wrong in Hartford (Kelly) or at least that it overstated the scope of the duty to defend and that a correct understanding would negate any such duty to defend in Heckman. Only the latter possibility matters here, and it cannot be ignored.

on that issue. At common law this was the rule, see Restatement (Second) of Judgments § 28(1) & cmt. a (1982), but the Supreme Court in United States v. Munsingwear, Inc., 340 U.S. 36, 39-41 (1950), said that a litigant who wants to avoid collateral estoppel effect should move to vacate the judgment below, which Hartford did not trouble to do after our per curiam disposition of the appeal in Hartford (Kelly).

Rhode Island law on the scope of the duty to defend is not a model of clarity. The core meaning of the pertinent "pleading" test is that an insurer, faced with a claim against the insured squarely within the coverage of the policy, cannot refuse to defend the insured merely because it believes that the facts at trial will show that the injury occurred in some way that would not be covered.[3] The pleading test may also mean that when one cannot tell what claim is being asserted against the insured but it _may_ be one covered by the policy--as in the common carrier count in _Kelly_--the duty to defend continues, at least until the scope of the claim is brought into focus. _E.g._, _Flori_ v. _Allstate Ins. Co._, 388 A.2d 25, 27 (R.I. 1978).

But what happens where the injury assertedly derives from the operation of a bus but an anterior act of negligence (_e.g._, hiring a negligent driver) or contemporaneous conduct (_e.g._, badly maintaining a turnaround) is charged in the complaint? Such a case presents a different problem than the insurer's denial of facts or a complaint's lack of clarity. Whether there is a duty to defend depends partly on how one reads the exclusion and partly on how Rhode Island courts want

---

[3]_Peerless Ins. Co._ v. _Viegas_, 667 A.2d 785, 787 (R.I. 1995) (citing _Employers' Fire Ins. Co._ v. _Beals_, 240 A.2d 397, 402 (R.I. 1968)); _Thomas_ v. _American Universal Ins. Co._, 93 A.2d 309, 312 (R.I. 1952).

to treat multiple-cause problems of this kind.  Lacking full briefing, the answer is not obvious to us.

Certainly a duty to defend may exist even though in the end there may prove to be no duty to indemnify, see <u>Flori</u>, 388 A.2d at 26; <u>see also</u> 7C Appleman, <u>Insurance Law and Practice</u> § 4684, at 83-85 (Berdal ed. 1979); and <u>Kelly</u> may have been such a case, partly because the critical counts were drafted to maintain some (count III) or almost total (count IV) ambiguity as to just what the plaintiff was alleging.  But it is not clear that the same uncertainty inheres in <u>Heckman</u>; one might in the end read the critical count in the complaint as straightforwardly alleging that Heckman was injured because he was run down by a bus driver who had been negligently hired, trained, supervised and entrusted with a bus.

If this is what the complaint means, it certainly poses a legal issue as to coverage, but it is not apparent that coverage in such a case differs as between the duty to defend and the duty to indemnify or requires a trial of the underlying liability case to resolve the coverage issue.  Even if the negligence inhered almost entirely in hiring or training, one reading of the policy (quite possibly not the only one) could be that the "arising out of" exclusion applied <u>on the face of the complaint</u> so as to negate any duty either to defend or to

indemnify.  Cf. Hingham Mut. Fire Ins. Co. v. Heroux, 549 A.2d 265, 266-67 (R.I. 1988).  Put differently, the duty to defend under such a policy may presuppose at least a possible duty to indemnify.

However, the question on this appeal is not the merits--on which we have no firm view--but whether the district court permissibly declined not to decide the merits.  From the district court's point of view, it had laid down a general principle in Hartford (Kelly) that it thought told Hartford that the district court would also find a duty to defend (but not to indemnify) the Heckman case.  Could it be an abuse of discretion for the district court to decline to repeat itself?  In the peculiar circumstances of this case, we think that it was.

The district court may or may not have been right in Hartford (Kelly) but the counts in Kelly that were decisive in creating a duty to defend are not present in Heckman and, as already noted, there is a possible reading of the policy that would negate a duty to defend in Heckman.  And, even if the district court's view of the law in Hartford (Kelly) suggests that it would find a duty to defend in Heckman as well, Hartford's legal obligation to defend in Heckman does remain "unsettled" (so far as the federal courts are concerned) until

this court has spoken (the Supreme Court is unlikely to have much interest in the merits).

It is possible that the district court did not fully appreciate that this court had not ruled on the scope of the duty to defend under Rhode Island law.  Just before declining "to give an encore performance," the district court said that its own Hartford (Kelly) decision had removed any pertinent uncertainty and, on appeal, "the court of appeals affirmed." Hartford (Heckman), slip op. at 3.  As already noted, our affirmance in Hartford (Kelly) was as to the duty to indemnify; the cross-appeal on the district court's duty-to-defend ruling was dismissed by us as moot.

Insurers often need immediate guidance as to whether they have an ongoing obligation to defend:  if they refuse, they may be in breach of contract or worse, and if they accede, they sometimes find they have prejudiced their position.  It is also unclear how easy it would be for Hartford to obtain a prompt declaratory ruling in the Rhode Island state courts.  Cf. Fireman's Fund Ins. Co. v. E.W. Burman, Inc., 391 A.2d 99, 101 (R.I. 1978) (courts have "broad discretion" to "deny declaratory relief" as to insurance coverage); Beals, 240 A.2d at 400-02. The issue before us would be more difficult if there were

clearly such a remedy and the district court had refused for that reason to rule.

Accordingly, we think that the ground on which the district court based its refusal to entertain the action does not persuade. On remand, the district court is free to consider whether there is any other reason, as matters now stand, why the declaratory judgment action should not be entertained. Assuming there is none, it is also free to enter a brief opinion denying relief on the merits, citing Hartford (Kelly), or to address the merits at greater length with the same or a different result.

The judgment of the district court is vacated and the matter remanded for further proceedings consistent with this opinion.