# United States Court of Appeals
## For the First Circuit

No. 20-1515

COVIDIEN LP; COVIDIEN HOLDING INC.,

Plaintiffs, Appellants,

v.

BRADY ESCH,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson, Circuit Judge,
and Gelpí,* Chief District Judge.

Mark C. Fleming, with whom Tasha J. Bahal, Adam M. Cambier, Matthew C. Tymann, and WilmerHale LLP were on brief, for appellants.
Lita M. Verrier, with whom Andrew L. Margulis and Ropers Majeski, PC were on brief, for appellee.

April 8, 2021

---

* Of the District of Puerto Rico, sitting by designation.

**GELPÍ, Chief District Judge.** This appeal arises from a contract action under Massachusetts law brought by appellants Covidien LP and Covidien Holding Inc. (collectively, "Covidien") against appellee Brady Esch, a former employee who assigned medical device patent rights to a company he subsequently founded. Following a nine-day trial, a jury found that Esch incurred in a breach of confidential information and awarded Covidien $794,892.24 in damages. Next, Covidien moved for a declaratory judgment asking that Esch be required to assign to it the inventions he made subsequently. The district court denied this request. Before this Court is Covidien's appeal of said post-trial ruling. Finding that the district court did not abuse its discretion, we affirm.

## I.

### A. Factual Background

Brady Esch began working for Covidien, a global healthcare company and manufacturer of medical devices and supplies, in 2009 when Covidien acquired his former employer, VNUS Technologies. In December 2009, Esch signed a Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Employment Agreement"). During his employment, Esch's work focused on the field of Endovenous ("EV") products or venous radiofrequency ("RF") ablation devices, which are used to treat superficial venous disease, commonly known as "varicose veins." Esch spent much of

his time at the company working with an eight-person team on a confidential global project, Project Cattleya, aimed at developing features for a new medical device to treat varicose veins.

In 2013 Esch, who then served as Director of Global Strategic Marketing, was terminated and signed a <u>Separation of Employment Agreement and General Release</u> ("Separation Agreement"). The same incorporated provisions from Esch's Employment Agreement.

Subsection II.A of the Employment Agreement provides that Esch must disclose to Covidien all "Inventions" created during his employment with the company or within one year after leaving the company. Specifically, it reads:

> You shall promptly disclose to the Company all Inventions (as defined in Subsection II.B), which are made or conceived by you, either alone or with others, during the term of your employment with the Company, whether or not during working hours. Such Inventions directly or indirectly relate to matters within the scope of your duties or field of responsibility during your employment with the Company, or are aided by the use of the time, materials, facilities, or information of the Company. You will not assert any rights under or to any Inventions as having been made or acquired prior to being employed by the Company unless such Inventions have been identified to the Company in writing on a document signed by you at the time of hire. In addition, in order to avoid any dispute as to the date on which Inventions were made or conceived by you, they shall be deemed to have been made or conceived during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment or within one year after separation from employment.

- 3 -

Subsection II.B of the Employment Agreement broadly defines "Invention" to include "whether or not patentable or copyrightable, the conception, discovery or reduction to practice of any new idea, technology, device, method, design, trade secret, composition of matter or any improvement thereto." Subsection II.C of the Employment Agreement further provides that Esch:

> [A]gree[s] that all Inventions that are, or are deemed to be, made or conceived by [him] during employment with the Company shall, to the extent permitted by law, be the exclusive property of the Company and [he] hereby assign[s] to the Company [his] entire worldwide right, title, and interest in and to any and all such Inventions.

Additionally, Subsection I.A of the Employment Agreement provides that Esch agrees not to disclose "to any other person or organization, or make or permit any use of" any of Covidien's "Confidential Information," which is defined in Subsection I.B.

Section 4(d) of the Separation Agreement, in turn, establishes that "any provisions of [the Employment Agreement] concerning the disclosure or ownership of inventions, methods, processes or improvements shall continue in full force and effect and shall not be superseded by any provision [thereof]." Section 4(d) further reiterates that Esch shall continue to abide by all previous agreements with respect to non-disclosure of "Confidential Information."

Shortly after Esch left Covidien, in February 2014, he

- 4 -

incorporated Venclose Inc. ("Venclose"), a closely-held company that would manufacture and sell a medical device to treat varicose veins. In March 2014, Esch filed Provisional Patent Application No. 61/970,498 ("the '498 Patent Application") which described the design, technology, and improvement to venous RF ablation devices. Then, in 2015, Esch and several other inventors filed Utility Patent Application No. 14/670,338 ("the '338 Patent Application") and a Foreign Patent Cooperation Treaty Application with the United States Patent and Trademark Office ("USPTO"), PCT/US2015/022849 ("the PCT Patent Application") (all three collectively, "Patent Applications"). He also filed a document with the USPTO that assigned all rights to the '338 Patent Application to Venclose.

## B. Procedural Background

In November 2016, Covidien filed a five-count complaint against Esch in the United States District Court seeking declaratory judgment to the effect that Esch assign his rights, title, and interest in the Patent Applications to Covidien (Count I). Additionally, Covidien alleged that Esch breached his obligations under the Employment and/or Separation Agreements by failing to disclose "Inventions" (Count II), failing to abide by an implied covenant of good faith and fair dealing (Count III), and disclosing "Confidential Information" (Counts IV and V).

The district court issued a preliminary injunction in favor of Covidien, enjoining Esch and his agents from making,

developing, manufacturing, or selling products that disclose or use any "Confidential Information" belonging to Covidien.

From May 13 to 23, 2019, the district court conducted a jury trial as to Covidien's claims pertaining to the Employment and Separation Agreements. Before trial commenced, both parties submitted their proposed special verdict forms. The verdict form ultimately tendered by the district court to the jury posed eight questions. Questions 1 and 2 inquired the jury whether Esch breached his confidentiality obligations to Covidien under the Employment and Separation Agreements, respectively. If answered in the affirmative, the jury was next asked to decide in Questions 1A and 2A, whether Covidien had proven damages resulting from said breach.

Question 3 of the verdict form inquired the jury whether Esch breached his obligation to disclose "Inventions" to Covidien under the Employment Agreement. If the jury answered "Yes" to the same, then it would proceed to answer Question 3A regarding the existence of damages for failing to disclose "Inventions." If, however, the jury answered "No" to Question 3, the verdict form directed it to answer Question 4, to wit, whether Esch breached the implied covenant of good faith and fair dealing. If Question 4 was answered affirmatively, then the jury would move to Question 4A regarding the existence of damages. Question 5 instructed the jury to award the amount of damages, if any, to Covidien as a

result of Esch's breach(es). Following Question 5, the verdict form provided the following instructions:

> **If you answer 3A "YES", proceed to Question 6. Otherwise, your deliberations are complete.**
>
> **Assignment of "Inventions"**
>
> 6. Has Covidien proved that Mr. Esch took steps to reduce to practice any "Inventions" in the '498 provisional patent before November 1, 2014?
>
> Yes _____ No _____
>
> 7. Has Covidien proved that the "Inventions" in the '498 provisional patent are found in the '338 non-provisional patent application?
>
> Yes _____ No _____
>
> 8. Has Covidien proved that the "Inventions" in the '498 provisional patent are found in the PCT patent application?
>
> Yes _____ No _____

On May 21, 2019, during the jury charge conference, the district court heard arguments regarding its special verdict form. At the time, Covidien did not object to same. However, when the district court specifically asked Covidien "Anything else?," Covidien indicated that "nothing else other than just for the record to reflect that my proposed edits [to the verdict form] would be global as far as confidential as well as damages." Nonetheless, the following morning, before the jury charge, Covidien filed a written objection to the special verdict form. The motion requested several modifications to the verdict form,

mainly, that the jury proceed to answer question 5 even if the jury answered Questions 1 through 4 in the negative. Notably, Covidien's motion did not request that the jury be instructed to answer Questions 6, 7, and 8.

The district court declined the invitation and informed the parties:

> I've adopted the – mainly just ordinary changes that have been requested by [Covidien]. I've used the Plaintiffs' name, as I have also used the Defendant's name.
> The Court has also listed Questions 1, 2, and 3 under a single heading of "Contract Claims" rather than using the separate headings for each. And I have deleted the word "confidential" [in] front of the word "inventions" in Questions 3, 6, 7 and 8. Any comments?

Covidien responded: "Nothing further from [us], Your Honor."

After the jury charge, yet before the jury was sent to deliberate, Covidien requested at sidebar that the district court instruct the jury to answer Questions 6, 7, and 8 regardless of a "Yes" or "No" answer. Esch opposed, stating that the district court's special verdict form was "logically laid out" and "consistent with the law." The district court did not rule on the matter and sent the jury to deliberate.

Following one day of deliberation, the jury reached a verdict finding that Esch breached his confidentiality obligations to Covidien under the Employment and Separation Agreements (Questions 1 and 2) and awarded Covidien $794,892.24 in damages

(Questions 1A, 2A, and 5). The jury also found that Esch neither breached his obligation to disclose "Inventions" (Question 3) to Covidien nor his covenant of good faith and fair dealing (Question 4). Given that the jury answered "No" to Question 3, it did not have to answer Question 3A (damages resulting of a breach to disclose "Inventions"), which in turn instructed that Questions 6 through 8 not be answered.

Before the jury was discharged, Covidien petitioned the district court to instruct it to resume deliberations and respond to Questions 6, 7, and 8. Covidien argued that "[t]he duty to disclosure and the affirmative steps to reduce inventions to practice arise under different paragraphs of the agreement" and that it was "a matter of the objections we filed." The district court indicated that Covidien had the verdict form "now for a day" and "saw the instruction that [it] gave to the jury that at Page 3, in bold, it says 'If you answer 3A yes, proceed to Question 6. Otherwise, your deliberations are complete.'" The district court highlighted that it did not "know what could be clearer than that." The district court further noted that the record was preserved, however, determined it could not inform the jury that it had "inconsistently followed [the] verdict form when [it] followed it to the letter."

Upon conclusion of the jury trial, Covidien moved for declaratory judgment and other post-trial relief. Regarding

- 9 -

declaratory judgment, it requested that Esch be required to assign any "Inventions" described in the Patent Applications to Covidien.

The district court issued a Memorandum and Order denying Covidien's request for declaratory judgment, reasoning that "[t]o agree with Covidien's logic, the jury would have had to reach the inconsistent conclusion that Esch's publication of Covidien's confidential information in the '338 Patent Application was simultaneously a breach of confidentiality and in satisfaction of his duty to disclose Inventions to Covidien." Covidien LP v. Esch, 427 F. Supp. 3d 152, 157 (D. Mass. 2019). The district court, in turn, considered that "the only alleged conduct relevant to disclosure of any potential Inventions was the publication of the '338 Patent Application," which the jury found to be a breach of Esch's obligation of confidentiality under the Employment Agreement. Id. at 158. Consequently, the district court held that "[c]ommon sense dictates that neither party anticipated that a breach of confidentiality under the Employment Agreement would, in turn, satisfy Esch's obligation to disclose Inventions to Covidien." Id. For such reason, Covidien's proposed reading of the verdict was "internally inconsistent" and the jury's "decisive" negative answer to Question 3 could only be read as a factual finding that no "Inventions" were made that are encompassed under the Employment Agreement. Id.

This appeal followed.

- 10 -

On appeal, Covidien posits that the district court's denial of the motion for declaratory judgment was erroneous and warrants reversal as the evidence presented at trial established that Esch indeed took affirmative steps to reduce an "Invention" to practice. Moreover, Covidien argues that the jury's verdict concerning Esch's obligation to disclose "Inventions" was simply not dispositive to the assignment thereof. Alternatively, Covidien moves to reverse the jury's verdict that Esch did not fail to disclose "Inventions." We analyze Covidien's arguments in turn, detailing additional facts when necessary.

### A. Post-Trial Declaratory Judgment

Covidien argues that it is entitled to a post-trial equitable declaratory judgment, pursuant to the assignment provisions of the Employment Agreement, since the evidence presented at trial supports its contractual breach claim.

The Declaratory Judgment Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). A declaratory judgment requires a trial court to make factual and legal distinctions "upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Id. at 287 (quoting Pub. Serv. Comm'n. of Utah v. Wycoff

- 11 -

Co., Inc., 344 U.S. 237, 243 (1952)); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007). Thus, if "considerations of practicality and wise judicial administration" advise against it, a trial court may choose, in its discretion, not to grant a declaratory judgment. Wilton, 515 U.S. at 288.

Our review of a district court's granting or withholding declaratory judgment "is conducted under a standard slightly more rigorous than abuse of discretion." Nat'l. R.R. Passenger Corp. v. Providence and Worcester R.R. Corp., 798 F.2d 8, 10 (1st Cir. 1986).[1] We have described this standard as a "middle ground," "independent" or "substantial deference" approach which is "more rigorous than abuse of discretion, but less open-ended than de novo review." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995)("We have captured a middle ground, expressing our preference for a standard of independent review when passing upon a trial court's discretionary decision to eschew declaratory relief."); Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d

---

[1] We have used different terms to describe the appropriate standard of review for denial of a declaratory judgment action. Compare Hartford Fire Ins. Co. v. Rhode Island Pub. Transit Auth., 233 F.3d 127, 130 (1st Cir. 2000) (applying a simple "abuse of discretion" standard), with Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 39 (1st Cir. 2006) (applying a "slightly more rigorous" than abuse of discretion standard)(quoting Natl. R.R. Passenger Corp., 798 F.2d at 10). See also Rossi v. Gemma, 489 F.3d 26, 38 n.21 (1st Cir. 2007) (explaining our apparent inconsistency in post-Wilton cases). Under either approach, nonetheless, we reach the same result herein.

306, 309 (1st Cir. 1986)("[I]ts determination is still entitled to substantial deference.").

Our standard of review "requires attentively digest[ing] the facts and the district court's stated reasons." El Día, Inc. v. Hernández Colón, 963 F.2d 488, 492 (1st Cir. 1992); Am. Home Assurance Co. v. Insular Underwriters Corp., 494 F.2d 317, 320 (1st Cir. 1974) ("This scope of review necessarily entails consideration of the reasons underlying dismissal."). Particularly, if we determine that "a different result should have been reached, then we will reverse or modify the judgment below." El Día, Inc., 963 F.2d at 492. Nonetheless, if "the decisional scales tip in favor of the district court's solution, or if the scales are in equipoise, then the judgment will stand." Id. "Bluntly put, we cede some deference to the trier, especially as to findings of fact, but we will not hesitate to act upon our independent judgment if it appears that a mistake has been made." Id.

In this case, there are two unique procedural aspects that add layers to our review. First, the declaratory judgment sought by Covidien is equitable in nature. A basic tenant of equity jurisprudence "is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." Id. at 497 (quoting Rosario-Torres v. Hernández-Colón, 889 F.2d 314, 321 (1st Cir. 1989)). "Simply because

- 13 -

an equitable remedy may be available does not necessarily mean that it must automatically issue."  Id.  Second, and most important, the precise form of declaratory relief sought follows three years of litigation concluded by a nine-day jury trial. Covidien requests that we evaluate and weigh in all evidence submitted before the jury as to the matter.  We decline to take this path, which goes beyond the scope of our "slightly more rigorous than abuse of discretion" standard of review and would amount to a *de novo* review of the jury verdict itself.

Our "middle ground" independent approach warrants "digesting" the procedural facts of this case and assessing the district court's reasoning for denying a post-trial equitable declaratory judgment.  First, we must consider whether the special verdict form and the jury instructions were adequate and whether the trial court's decision not to modify these constitutes a reversible error.  Second, we must determine whether the district court's factual inference that no "Inventions" were made under the terms of the Employment Agreement is permissible and internally consistent with the jury's verdict.

## B. **Verdict Form and Jury Instructions**

Covidien adduces that, contrary to the district court's rationale for denying the declaratory judgment, the jury's verdict concerning Esch's obligation to disclose "Inventions" was not dispositive to the assignment provisions.  Such proposition is

premised on the district court's refusal to instruct the jury, at the charge conference as well as following deliberation, to answer Questions 6 through 8, regardless of a "Yes" or "No" answer to Question 3 (whether Esch breached his obligation to disclose "Inventions"). Covidien contends that if such instruction had been provided, we would specifically know the jury's position as to whether Esch took affirmative steps to reduce an "Invention" to practice.

"A verdict form must be reasonably capable of an interpretation that would allow the jury to address all factual issues essential to the judgment." Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 134 (1st Cir. 2004) (quoting Sheek v. Asia Badger, Inc., 235 F.3d 687, 699 (1st Cir. 2000)). "To determine whether the issues were fairly presented to the jury, we examine the [district] court's instructions and the wording of the verdict form as a whole." Id.; see also Santos v. Posadas de Puerto Rico Associates, Inc., 452 F.3d 59, 65 (1st Cir. 2006) ("[I]nstructions, coupled with a minimalist set of verdict forms, hardly can be considered misleading.").

A jury instruction error is reviewed de novo "if properly preserved, [and will be] revers[ed] only if the rejected instruction was substantively correct, essential to an important issue in the case, and not substantially covered in the charge given." Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28,

36 (1st Cir. 2011) (internal citations omitted).  Pursuant to Fed. R. Civ. P. 51(c)(2), generally, an objection is properly preserved if made before the trial court charges the jury.  Booker v. Mass. Dept. of Pub. Health, 612 F.3d 34, 40-41 (1st Cir. 2010).  We conclude that Covidien preserved the underlying issue for appellate review and, thus now turn to the special verdict form itself and the instructions given to the jury.

The structure of the special verdict form gave the jury "a simple, easily understood outlet through which to express its conclusions" by answering "Yes" or "No" to each proposed question. Santos, 452 F.3d at 65. It also logically identified each of Esch's obligations regarding the Employment or Separation Agreements, respectively.  In fact, the special verdict form's final version is nearly identical to the proposed verdict form Covidien initially submitted.  The verdict form plainly included in Questions 1, 2 and 3 language allusive to the terms of the Employment and Separation Agreements.  The inclusion of this language reasonably directed the jury to the applicable sections of the contracts for them to address "all factual issues essential to the judgment." Sánchez-López, 375 F.3d at 134.

We next scrutinize the structure of the special verdict form as to Questions 6, 7, and 8. Considered "as a whole," Questions 6, 7, and 8 are consistent with the applicable law in these specific causes of actions.  Section II of the Employment

- 16 -

Agreement titled "Inventions" describes in three paragraphs Esch's contractual obligation regarding the disclosure and assignment of all "Inventions," while also defining the latter term. Paragraph A contains both Esch's disclosure and assignment obligations. Paragraph A specifically provides that Esch "shall promptly disclose to the Company all Inventions" and it also establishes that he "will not assert any rights under or to any Inventions," where he "made or conceived" such "Inventions" "during the term of [his] employment with the Company." Paragraph A goes on to deem any "Inventions" for which Esch took "affirmative steps to have them reduced into practice" within a year of his separation from Covidien as having been made or conceived by him during his employment there. In Paragraph C, the assignment obligation is restated and expanded by language to the effect that Esch "hereby assign[s] to the Company [his] entire worldwide right, title, and interest in and to any and all such Inventions." Given that Section II of the Employment Agreement contains any and all obligations relating to "Inventions" and assignment, there was no need for the jury to answer Questions 6,7, and 8 if it found that Esch did not breach his obligation to disclose "Inventions," because the jury could have decided whether there were "Inventions" when deliberating the disclosure issue. The special verdict form was reasonable and logically redacted and explicitly indicated that Question 3 must be answered "under the terms of the Employment

Agreement."  This unmistakably directed the jury to consider and weigh the evidence presented during trial according to the terms of the entire Employment Agreement, including both the disclosure and assignment obligations detailed in Section II.

On appeal, no one disputes that Massachusetts law governs the terms of the Employment and Separation Agreements dispute.  Covidien LP v. Esch, 378 F. Supp. 3d 119 (D. Mass. May 6, 2019).  As a matter of law, the sections of the Employment and Separation Agreements applicable to the issue before us are unambiguous.  Balles v. Babcock Power Inc., 70 N.E.3d 905, 911 (Mass. 2017); Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 951 (Mass. 2002); see also Edmonds v. U.S., 642 F.2d 877, 881 (1st Cir. 1981). It is, hence, the courts' prerogative to determine their proper interpretation.  A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transportation Auth., 95 N.E.3d 547, 553 (Mass. 2018); see also Nadherny v. Roseland Prop. Co., Inc., 390 F.3d 44, 48-49 (1st Cir. 2004).

During its charge to the jury, the district court sufficiently addressed the Employment and Separation Agreements under applicable Massachusetts law.  The definition of "Inventions" and the assignment provisions were particularly explained.  The district court specifically instructed the jury that:  "An invention is reduced to practice when it has been tested sufficiently to show that it will work for its intended purpose or

- 18 -

when it is fully described in a patent application filed within the United States Patent and Trademark Office." Such explanation mirrors that of the Employment Agreement terms and references any finding about affirmatively reducing to practice an "Invention" to the descriptions detailed in the Patent Applications. Similarly, the district court instructed the jury that information revealed in the Patent Applications could be considered a confidentiality breach, according to the Employment and Separation Agreements. These instructions were not objected to by Covidien.

We hold that the objection preserved by Covidien requesting the jury to answer Questions 6, 7, and 8 regardless of the response to Question 3, was neither "substantively correct" nor "essential to an important issue" and was an instruction "substantially covered in the charge." Rodríguez, 642 F.3d at 36; Sheek, 235 F.3d at 698. Hence, the special verdict form and the district court's rejection of Covidien's proposed instruction do not amount to a reversible error.

## C. Inconsistent Verdict

In its Memorandum and Order denying declaratory relief, Covidien LP, 427 F. Supp. 3d at 158, the district court explained that the only conduct relevant to disclosing any potential "Inventions" was the publication of the '338 Patent Application. The district court determined that the publication of the '338 Patent Application amounted, in the jury's eyes, to a breach of

- 19 -

Esch's confidentiality obligation under the Employment Agreement. Id. The district court further reasoned that it would be inconsistent for the jury to find that publishing the '338 Patent Application was "simultaneously" a breach of confidentiality and a satisfaction of Esch's obligation to disclose "Inventions" to Covidien. Id. Thus, the verdict can only be consistently interpreted as determinative that Esch's compliance with his duty to disclose any potential "Invention" implies that no "Inventions" were made under the Employment Agreement's term. If there were no "Inventions," then there was no need to answer Questions 6, 7, and 8 because an "Invention," as contractually defined, had to be made for Esch to assign it to Covidien.

"Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962). Moreover, "it is the duty of the courts to attempt to harmonize the answers [to special interrogatories], if it is possible under a fair reading of them." Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1963); see also Santiago-Negrón v. Castro-Dávila, 865 F.2d 431, 443 (1st Cir. 1989) ("[W]e must determine . . . whether the first answers [to special interrogatories] can be made

- 20 -

consistent under any view of the case.").

When considering apparent inconsistent verdicts, we note that other Circuits have required, on Seventh Amendment grounds, that district courts sitting in equity follow necessary factual implications in jury verdicts and that any findings not necessarily implied by, but nonetheless consistent with, the verdict is left to the trial judge. See, e.g., Teutscher v. Woodson, 835 F.3d 936, 944 (9th Cir. 2016) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims." (internal quotations marks, citation, and alteration omitted)); Miles v. Indiana, 387 F.3d 591, 599-600 (7th Cir. 2004) (similar); Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 912-13 (10th Cir. 2004) (similar).

Covidien relies on this logic and advances that the district court erred because the jury technically could have found that Esch both violated the confidentiality provision by publishing the Patent Applications and satisfied his duty to disclose any "Inventions" that were described therein by doing the same. In other words, Covidien argues that the district court was not bound by the verdict and had discretion to makes its own factual finding since the jury's decision does not necessarily reflect a determination that Esch did not make an "Invention."

- 21 -

We disagree. The jury's verdict did necessitate a finding that there were no "Inventions" and was not simply a plausible inference among various that the district court could have drawn. The district court was required to attempt to reconcile apparent inconsistencies in the jury verdict. See Thomas & Betts Corp. v. New Albertson's, Inc., 915 F.3d 36, 59 (1st Cir. 2019). See also Gallick, 372 U.S. at 119 ("[W]e must attempt to reconcile the jury's findings, by exegesis if necessary"). Covidien has not made, and has therefore waived, any argument that the district court arrived at an erroneous conclusion that it was legally impossible for Esch to fulfill his duty of disclosure by violating his duty of confidentiality. See Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d 387, 391 (1st Cir. 2014) ("[A]bsent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.") (quoting Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)).

Likewise, Covidien contests the district court's reasoning that the '338 Patent Application was the only disclosure that the jury could have found. However, public disclosure by way of the '338 Patent Application was the only hypothetical alternative jury finding on disclosure that Covidien raised in its memorandum of law before the district court. Since Covidien "makes no argument . . . that any error here constituted plain

- 22 -

error," it also waived said argument.  <u>Thomas & Betts</u>, 915 F.3d at 58 (citing <u>U.S.</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)).

Finally, the potential jury verdict inconsistency we are asked to determine is not between two irreconcilable jury findings. Rather, it is one between a jury finding of breach of confidentiality and the district court's inference about the jury's finding — a satisfaction of the disclosure obligation — that tacitly found no "Inventions" were made.  Although Covidien has presented an alternate reading to the jury's findings, this also does not entail that "a different result should have been reached."  <u>El Día, Inc.</u>, 963 F.2d at 492.

The district court's inference was not only permissible but also necessary and consistent with the jury's findings as to the confidentiality and disclosure obligations contained in the Employment and Separation Agreements.  As previously discussed, the jury instructions meticulously tied together the concepts of breach of confidentiality and duty to disclose "Inventions" under the Employment and Separation Agreements vis-à-vis the submissions and information detailed in the Patent Applications.  In this regard, we confer considerable discretion and deference to the district court's explanation and common-sense approach and reasoning.  "[T]he scales are in equipoise" or of little weight, and the ruling must stand.  <u>Id.</u>

## Conclusion

The district court found that the jury's decision not to answer Questions 6, 7, and 8 was "decisive" to its ruling. We hold that the district court did not abuse its discretion in denying Appellants' post-trial declaratory judgment request.

For the foregoing reasons, we <u>affirm</u> the district court's judgment entered on December 13, 2019.