# United States Court of Appeals
## For the First Circuit

No. 05-2070

FRANCIS SANTOS ET AL.,

Plaintiffs, Appellees,

v.

POSADAS DE PUERTO RICO ASSOCIATES, INC.,
D/B/A WYNDHAM CONDADO PLAZA HOTEL AND CASINO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Lynch and Lipez, Circuit Judges.

Michelle Pirallo Di Cristina, with whom Jeannette López de
Victoria and Pinto-Lugo, Oliveras, & Ortiz, PSC were on brief, for
appellant.
Jaime F. Agrait Lladó, with whom Agrait-Lladó Law Firm was on
brief, for appellees.

June 29, 2006

**SELYA**, **Circuit Judge**. In this slip-and-fall action, brought under diversity jurisdiction, see 28 U.S.C. § 1332(a), the plaintiffs won a total of $1,250,000 in damages. On appeal, the defendant presses four claims of error. None has merit. Consequently, we affirm the judgment below.

## I.

## Background

The jury supportably could have found the following facts. On October 16, 2003, the plaintiffs, Francis Santos and his wife, Diane, then visiting Puerto Rico from Massachusetts, were guests at the Wyndham Condado Plaza Hotel and Casino (the Hotel). As Santos entered the Hotel's pool, he slipped and fell, sustaining serious injuries.

The steps that Santos used to enter the pool were large and semicircular, under water, with glossy tiles at the edge of each step. Expert testimony offered on behalf of the plaintiffs indicated that the variable friction between the steps and their edges, the slipperiness of the glossy tiles when wet, the geometric configuration of the semicircular steps, and the absence of a handrail combined to create a perilous condition. Knowing that guests used the steps to enter and exit the pool, the Hotel neither made them safe for this readily foreseeable use nor warned of the

-2-

inherent danger. These failures, the jury plausibly could have found, caused the accident.[1]

Francis and Diane Santos charged the Hotel with negligence and sued for damages in Puerto Rico's federal district court. See P.R. Laws Ann. tit. 31, §§ 5141-5142. The district court empaneled a jury and a two-day trial commenced on May 18, 2005. The plaintiffs presented the bulk of their case in chief on the first day of trial. Because their medical expert, Dr. Carlos Grovas, was unavailable, the district court reordered the proof, see Fed. R. Evid. 611(a), and compelled the Hotel to present its entire case before the plaintiffs presented Grovas's testimony (the plaintiffs had, however, already presented all of their liability evidence). Grovas testified after the defendant rested. The Hotel did not ask to recall its medical expert or to present any rebuttal evidence on damages.

After the evidence had closed, counsel offered summations and the court instructed the jury. The Hotel proffered an elaborate special verdict form, see Fed. R. Civ. P. 49(a), but the district court rejected it in favor of a simpler approach. Using the court's verdict forms, the jurors found negligence on the Hotel's part, absolved the plaintiffs of any comparative negligence, and proceeded to award Francis Santos $1,000,000 for

_____

[1]The Hotel presented expert testimony indicating that the steps were safe, but the jury was free to credit the plaintiffs' expert.

his injuries and Diane Santos $250,000 for consequential damages (e.g., loss of consortium).  This timely appeal followed.

## II.

## Analysis

On appeal, the Hotel seeks to challenge (i) the district court's alteration of the order of proof; (ii) its decision to allow the plaintiffs' liability expert to testify; (iii) its rejection of a tendered special verdict form; and (iv) its denial of the Hotel's motion for judgment as a matter of law.  We address these claims of error sequentially.

## A.

## Order of Proof

The Hotel strives to convince us that it was unfairly burdened, and the plaintiffs unfairly advantaged, by the district court's alteration of the order of proof.  We are not persuaded.

"It is axiomatic that district courts enjoy wide latitude in matters concerning the ordering of proof and the presentation of evidence."  Morales Feliciano v. Rullán, 378 F.3d 42, 57 (1st Cir. 2004); see Fed. R. Evid. 611(a) (mandating that "[t]he court shall exercise reasonable control over the mode and order of . . . presenting evidence").  We review order-of-proof determinations for abuse of discretion and will set aside a verdict based on a challenge to such a determination only if the complaining party musters a substantial showing of unfair prejudice.  See Morales

-4-

Feliciano, 378 F.3d at 57; see also Elqabri v. Lekas, 964 F.2d 1255, 1260 (1st Cir. 1992).

Here, the Hotel complains that it was unduly prejudiced in two ways: by having only one hour following the court's Rule 611(a) order within which to gather and prepare its witnesses,[2] and by what it characterizes as an improper shifting of the burden of proof on the issue of damages. Both plaints lack force.

As to witness preparation, it is nose-on-the-face plain that such preparation could not have been substantially affected by Grovas's delayed appearance. After all, Grovas's trial testimony did not last long; it comprises only thirty transcript pages. This means that even if Grovas had testified before the defense went forward, the Hotel would have had only an extra hour, at most, to gather and primp its witnesses. Minor scheduling changes of this sort occur on a daily basis in the course of trial practice, and counsel must be ready to deal with them. In the absence of special circumstances — and none are present here — such tweakings of the order of proof do not work unfair prejudice.

The Hotel's professed concern about burden-shifting strikes us as chimerical. The district court, sensitive to this

---

[2]We note, in passing, that the Hotel may well have known about the scheduling conflict in advance of the trial (plaintiffs' counsel claims that he raised the scheduling conflict during a pretrial conference two days prior to trial). There is no transcript of that conference in the record, however, so we assume for argument's sake that the Hotel was surprised by Grovas's unavailability.

possibility, gave a crystal clear set of jury instructions, telling the jurors several times that the burden of proof as to all elements of the case, including damages, rested with the plaintiffs. We can presume that the jury followed these instructions, see Richardson v. Marsh, 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption . . . that jurors follow their instructions"); Evans v. Avery, 100 F.3d 1033, 1041 (1st Cir. 1996) (similar), and the instructions given here cured any conceivable prejudice.

The short of it is that the district court's decision to allow a lone witness to testify out of order was not, on the facts of this case, anything close to an abuse of discretion.[3]

## B.

### Expert Testimony

The Hotel attacks the admission of testimony from the plaintiffs' liability expert, Dr. Ricardo Galdós. It questions both Galdós's qualifications and his scientific methodology.

Galdós's testimony admittedly was crucial to the plaintiffs' case. He testified, in substance, that a defect in the

---

[3]Seemingly as an afterthought, the Hotel insinuates that there was unfair prejudice arising out of the altered timing of its Rule 50(a) motion for judgment as a matter of law. Its point appears to be that it was forced to argue this motion at the close of the liability evidence (prior to the testimony of either medical expert). That is balderdash; there is nothing in the record that suggests that the district court might have ruled differently had the motion been argued at some other time.

premises led to Santos's fall. That dangerous condition was comprised of a combination of factors, such as variable friction between the steps and their edges, the use of an unsuitable type of tile at the edges, the peculiar configuration of the stairs, and the absence of a handrail.[4] We review the district court's decision to admit or exclude expert opinion testimony for abuse of discretion. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). We discern none here.

Federal Rule of Evidence 702 permits opinion testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education." The Hotel notes that Galdós has no experience in the construction or design of swimming pools per se,

_____

[4]Galdós testified in pertinent part:

I think the biggest problem as it relates to this particular fall is [a] combination of . . . factors. Specifically, as one walks from the entry into the pool, one first steps on an area that is fairly rough. . . .
Then you come up to an area where you have that glazed ceramic tile. That difference in friction, alone, is a cause of people falling. . . .
So you have that first, that change in frictional properties that creates an element for a fall to occur.
At the edge of the steps, you also have that glossy ceramic tile which is very slippery when it is wet. This is clearly under water. There is an absence of any hydrostatic film which may . . . create an even more slippery condition.
So we have variable friction. We have something that, by itself, in fact, is very slippery. And then you have, as we saw, the change in geometry of successive steps. That effectively disrupts the normal pattern of walking, the normal rhythm. That also creates an element for the fall to occur.
[And] we also have the absence of a hand rail.

and argues that he should not have been allowed to testify as an expert in this instance. But experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field. Cf. United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing the value of "extensive practical experience"). The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702 — knowledge, skill, experience, training, or education. See United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995); United States v. Paiva, 892 F.2d 148, 160 (1st Cir. 1989).

In this case, the record reveals that Galdós holds a doctorate in mechanical engineering, that he is certified by the National Academy of Safety as a tribologist (that is, someone who deals with friction and the application of friction to the way pedestrians walk), and that in his professional capacity he has analyzed approximately 2,000 slip-and-fall accidents since 1990. Given this background, we cannot say that the district court abused its discretion in deeming Galdós qualified to offer expert testimony in a slip-and-fall case. See, e.g., Correa v. Cruisers,

a Div. of KCS Int'l, Inc., 298 F.3d 13, 25 (1st Cir. 2002); Hoffman, 832 F.2d at 1310.

Rule 702 also requires that "(1) the testimony [be] based upon sufficient facts or data, (2) the testimony [be] the product of reliable principles and methods, and (3) the witness ha[ve] applied the principles and methods reliably to the facts of the case." In undertaking this reliability review, an inquiring court may consider a wide array of factors, including but not limited to "the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-95 (1993)). In the last analysis, the reliability inquiry must be flexible and case-specific. See Daubert, 509 U.S. at 594.

Galdós testified that, in addition to interviewing Francis Santos, he visited the Hotel pool, measured the steps, examined photographs of the area, reviewed applicable codes and standards, made needed calculations, and drew upon his extensive friction testing of various tiles (including tiles similar to those used to edge the pool steps). The district court knew that any doubts as to either the accuracy of Galdós's opinion or the weight to be given to it would be thoroughly explored by means of defense

-9-

counsel's cross-examination, the Hotel's presentation of contrary expert testimony, and the jury instructions. See Daubert, 509 U.S. at 596. In the end, the court pronounced itself satisfied that Galdós's approach was scientifically plausible and that his methodology possessed adequate indicia of reliability to allow his expert opinion to go to the jury. This determination was within the encincture of the trial court's discretion. See, e.g., Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 171 (1st Cir. 2005) (finding no abuse of discretion in a district court's determination that life-care planning expert's methodology — reviewing records, receiving a letter, and conducting interviews — was sufficiently reliable).

## C.

### Verdict Form

The district court gave the jurors two verdict forms, one to be used if they found for the defendant and the other to be used if they found for the plaintiffs. The latter form also asked whether any comparative negligence had occurred; if so, to what extent; and, finally, the amount of damages to be awarded. The Hotel assails these verdict forms as too general, exhorting us to rule that the court should instead have employed a more elaborate special verdict form, separately cataloguing the various elements of the plaintiffs' cause of action, that the Hotel had proffered. See Fed. R. Civ. P. 49(a).

"A verdict form must be reasonably capable of an interpretation that would allow the jury to address all factual issues essential to judgment." Sheek v. Asia Badger, Inc., 235 F.3d 687, 699 (1st Cir. 2000) (citation and internal quotation marks omitted). We review the form as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury. See Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 134 (1st Cir. 2004).

The Hotel does not challenge the wording of the verdict forms used by the court. It also concedes — as, indeed, it must — that this case was not a complicated one — the claim asserted was a garden-variety negligence claim, and the district court properly instructed the jury on every element essential to that cause of action. Those instructions, coupled with a minimalist set of verdict forms, hardly can be considered misleading. The forms gave the jury a simple, easily understood outlet through which to express its conclusions. There was no error in the district court's use of the minimalist verdict forms. See, e.g., Sheek, 235 F.3d at 698-99 (finding no error in a verdict form that did not ask separate questions concerning direct and vicarious liability where the court adequately instructed the jury on the issues); cf. Johnson v. Teamsters Local 559, 102 F.3d 21, 28 (1st Cir. 1996) (recognizing that if "the general charge adequately directs the jury to its duties in answering the questions submitted to it there

is no need to accompany the submission with repetitive instruction" (citation and internal quotation marks omitted)).

At the expense of carting coal to Newcastle, we add that Rule 49(a) is permissive, not obligatory. <u>See</u>, <u>e.g.</u>, <u>Mueller</u> v. <u>Hubbard Milling Co.</u>, 573 F.2d 1029, 1038 n.13 (8th Cir. 1978). Consequently, a district court's decision not to adopt a special verdict form proposed by a party is subject to review only for abuse of discretion. <u>See</u> <u>Transam. Premier Ins. Co.</u> v. <u>Ober</u>, 107 F.3d 925, 933 (1st Cir. 1997). Given the straightforwardness of the plaintiffs' cause of action and the district court's supportable determination that the Hotel's proposed special verdict form was "too complicated," we are unwilling to second-guess the court's decision to simplify the process. Less is sometimes more.[5]

## <u>D</u>.

### <u>Sufficiency of the Evidence</u>

As a last-ditch measure, the Hotel contends that the district court should have entered judgment as a matter of law in its favor because the plaintiffs presented insufficient evidence of

---

[5]To the extent that the Hotel assigns error on the ground that the district court did not share the verdict forms with counsel before charging the jury, we note only that our previous "suggest[ion] that proposed verdict forms always be shared with counsel and discussed together with the proposed jury instructions before the jury charge," <u>Sanchez-Lopez</u>, 375 F.3d at 135, was simply a suggestion. Where, as here, the district court opts to use standard verdict forms and does not mislead counsel about its intentions, any error in failing to follow that suggested protocol was harmless.

the Hotel's actual or constructive knowledge of an unsafe condition. This contention is procedurally defaulted: the Hotel twice moved unsuccessfully for judgment as a matter of law during the trial, <u>see</u> Fed. R. Civ. P. 50(a), but failed to renew its motion after the verdict, <u>see</u> Fed. R. Civ. P. 50(b). That failure undermines the Hotel's attempt to advance a sufficiency of the evidence challenge on appeal.

It is settled that a party's "entitlement to judgment as a matter of law . . . cannot be appealed unless [its Rule 50(a)] motion is renewed pursuant to Rule 50(b)." <u>Unitherm Food Sys., Inc.</u> v. <u>Swift-Eckrich, Inc.</u>, 126 S. Ct. 980, 987 (2006). The Hotel's assignment of error falls squarely within the compass of this holding. It is, therefore, bootless.

### **III**.

### **Conclusion**

We need go no further. For the reasons elucidated above, we affirm the verdict and judgment.

**Affirmed**.

-13-