**Eduardo BADO–SANTANA et al., Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, Defendant.**

**Civil No. 00–2517 (GAG).**

United States District Court, D. Puerto Rico.

Feb. 5, 2007.

Jose A. Gallart, Angelique Doble–Bravo, Gallart Law Office, San Juan, PR, for Plaintiffs.

Manuel A. Guzman–Rodriguez, Guzman & Steffens, San Juan, PR, PHV David R. Kelly, Bowman & Brooke LLP, Minneapolis, MN, PHV Michiko Ando, Snell & Wilmer, LLP, Denver, CO, for Defendant.

### *OPINION AND ORDER*

GELPI, District Judge.

Plaintiffs filed the instant case against defendant for the damages suffered from an automobile accident that occurred on May 2, 1999 where a Ford Explorer overturned and Carlos Bado, the driver, died in the accident. Bado left behind his then pregnant girlfriend, co-plaintiff Tatiana Cortes ("Cortes"), who was a passenger in the vehicle, and his daughter, who was born after the accident, co-plaintiff Carolina Bado–Cortes. Plaintiffs claim that the accident resulted from defendant's negligence in manufacturing the vehicle.

This matter is before the court on a *motion in limine* filed by defendant to preclude plaintiffs from presenting at trial all evidence that Cortes suffered Mild Traumatic Brain Injury ("MTBI") as a result of the car accident. After reviewing the pleadings and pertinent law, the court **DENIES** defendant's motion to exclude all evidence as to any MTBI suffered by Cortes (Docket No. 135).

### I. Relevant Procedural History

On September 7, 2004, defendant filed a *motion in limine* to preclude plaintiffs' expert, Dr. Maria Margarida, and Cortes from testifying that Cortes suffered MTBI as a result of the car accident. *See* Docket No. 135. Plaintiffs filed their opposition on September 21, 2004. *See* Docket No. 164. On February 28, 2005, the court found that defendant had presented a *Daubert* challenge as to the qualifications of Dr. Margarida to testify that Cortes had suffered MTBI as a result of the accident. *See* Docket No. 218 at 5. Accordingly, the court ordered a *Daubert* hearing and denied defendant's *motion in limine* without prejudice until the *Daubert* hearing. *Id.*

On March 28, 2005, the parties filed a joint informative motion regarding the issues to be covered at the *Daubert* hearing. *See* Docket No. 220. In that motion, the parties stated that with relation to Dr. Margarida, the *Daubert* hearing will address whether she, "as a neuropsychologist, and without support of any medical evidence as to the diagnosis of said condition, is qualified to testify as to plaintiff Tatiana Cortes' alleged Mild Traumatic Brain Injury." *Id.* at 5e.

On June 24, 2005, the court held a *Daubert* hearing. *See* Docket No. 225. At that hearing, the court heard the testimony of Dr. Margarida. After Dr. Margarida's examination, the court ordered the defendant to file a brief as to Dr. Margarida's capacity to testify that Cortes suffered MTBI as a result of the accident. *Id.* On July 11, 2005, defendant submitted such brief. *See* Docket No. 227. Plaintiffs filed their reply brief on July 27, 2005. *See* Docket No. 229.

The case was reassigned to the undersigned on August 14, 2006. *See* Docket No. 281. On October 31, 2006, the court denied the pending summary judgment motion. *See* Docket No. 290.

## II. Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

Rule 702 imposes "a gate-keeping function on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir.2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The review for reliability encompasses an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786. As to the relevancy criterion, "expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir.1998) (citing *Daubert*, 509 U.S. at 591–92, 113 S.Ct. 2786). The Rule 702 inquiry is a "flexible one, and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under Daubert." *United States v. Diaz*, 300 F.3d 66, 74 (1st Cir. 2002) (citing *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786).

## III. Legal Analysis

Defendant has moved to preclude plaintiffs from presenting at trial all evidence that Cortes suffered MTBI as a result of the car accident. Specifically, defendant asks the court to exclude the testimony of Dr. Maria Margarida because she is not qualified to testify about MTBI and because her opinion is based on flawed methodology. The court will evaluate these claims.

### A. Expert Qualifications

■ Before accepting expert testimony, a district court must determine whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed.R.Evid. 702. "It is well-settled that 'trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses.'" *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 30 (1st Cir.2000) (quoting *Richmond Steel Inc. v. Puerto Rican Am. Ins. Co.*, 954 F.2d 19, 20 (1st Cir.1992)). There is no mechanical formula for determining whether an expert is qualified to offer opinion evidence in a particular field. *Santos v. Posadas De Puerto Rico Associates, Inc.*, 452 F.3d 59, 63 (1st Cir.2006). "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as expert in a particular field, through any one or more of the five bases enumerated in Rule 702– knowledge, skill, experience, training, or education." *Id.* at 63–64 (citing *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995); *United States v. Paiva*, 892 F.2d 148, 160 (1st Cir.1989)).

■ Plaintiffs claim that Dr. Margarida is qualified to render expert testimony on

MTBI because of her education, knowledge, and experience in said field. Dr. Margarida is a neuropsychologist who obtained her doctoral degree in clinical psychology at the Massachusetts School of Professional Psychology and a post-doctoral degree in neuropsychology at the Children's Hospital in Harvard Medical School. *See* Docket No. 263 at 97. As part of her post-doctoral studies, Dr. Margarida took seminars in functional neuroanatomy, the physiological basis of behavior, and brain coding. *Id.* at 98–99. Additionally, Dr. Margarida received extensive training in the administration and interpretation of neuropsychological tests, which are the tools used by neuropsychologists to determine brain dysfunction. *Id.* at 99. After finishing her graduate work, Dr. Margarida has taken continuing education courses, some in the area of traumatic brain injury. *Id.* at 102.

Since 1992, Dr. Margarida has worked in the Neurology Section of the Department of Medicine at the University of Puerto Rico Medical School. *Id.* at 99. As part of her work, Dr. Margarida performs various functions. She directs clinical work, which involves testing and evaluating individuals referred by private practitioners including neurologists, neurosurgeons, pathologists, psychologists, and internists. *Id.* at 99–100. Many of these referrals are patients with head trauma. *Id.* at 100. These patients are typically referred by neurologists who depend on neuropsychologists to diagnose certain neurological conditions like mild, moderate, and severe brain injuries. *Id.* at 101. Over the years, Dr. Margarida has handled thousands of MTBI cases. *Id.* at 113. In addition to this clinical work, Dr. Margarida conducts research in a wide variety of areas. In the past, she has done research on head and brain injuries. *Id.* at 101. Finally, Dr. Margarida works with the neurology residents. *Id.* at 102. She is part of the staff that trains residents in areas such as the diagnosis of traumatic brain injury. In the past, Dr. Margarida has offered seminars to medical students in different topics including traumatic brain injury. *Id.* These seminars have covered how to diagnose, evaluate, identify the symptoms of, manage, and treat traumatic brain injuries. *Id.*

Despite this experience, training, and education, defendant contends that Dr. Margarida is not qualified to render expert testimony on MTBI because: (1) she is not a neurologist or physician; (2) she admitted that she is not an MTBI expert; and (3) she has not done extensive research or written articles regarding MTBI. The court disagrees with defendant. The fact that Dr. Margarida is not a neurologist or physician does not resolve whether she is qualified to render expert testimony on MTBI. *See United States v. Hoffman,* 832 F.2d 1299, 1310 (1st Cir.1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing the value of "extensive practical experience"). Furthermore, the American Psychological Association has stated that neurological examinations are very limited in their capacity to detect brain damage, and that neuropsychological testing is the only means of diagnosing some forms of brain damage. *See* Exhibit 1, pp. 31–36, Docket No. 229.

Similarly, defendant's reliance on Dr. Margarida's statement that she did not consider herself an expert on MTBI is unavailing. When asked to clarify that statement, Dr. Margarida explained that she was speaking from a personal perspective and not from a legal perspective. *See* Docket No. 263 at 108. In her personal opinion, an expert is a specialist, someone who dedicates his or her life to only doing one thing. *Id.* at 109. Dr. Margarida did

not consider herself a specialist on MTBI because she does not dedicate her life to only studying traumatic brain injuries. However, a witness need not be a specialist to qualify as an expert. *See Mitchell v. United States,* 141 F.3d 8, 15 (1st Cir.1998) (citing *Letch v. Daniels,* 401 Mass. 65, 514 N.E.2d 675, 677 (Mass.1987)) (holding that a "medical expert need not be a specialist in the area concerned nor be practicing in the same field as the defendant").

Finally, to qualify as an MTBI expert, Dr. Margarida need not have conducted research nor written articles on MTBI. A witness can qualify as an expert "in a particular field, through any one or more of the five bases enumerated in Rule 702– knowledge, skill, experience, training, or education." *Santos,* 452 F.3d at 63–64. The record in this case shows that Dr. Margarida is sufficiently experienced, trained, and educated to render expert testimony on MTBI. Dr. Margarida has received training in brain dysfunction, performed extensive clinical work with brain injury patients (including thousands with MTBI), taught medical students how to diagnose MTBI, and taken continuing education courses on traumatic brain injuries. Additionally, Dr. Margarida is one of two neuropsychologists that gets referred all of the cases in Puerto Rico with traumatic brain injury. *See* Docket No. 263 at 113. In light of the above, the court holds that Dr. Margarida is qualified to render expert testimony on MTBI.

## B.   Expert Methodology

■   After determining that an expert is qualified to testify, the court must make a "preliminary assessment of whether the reasoning or methodology underlying [the proffered] expert testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts at issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. The Court in *Daubert* suggested several factors to consider in assessing an expert's reliability: (1) whether the theory or technique can be and has been tested;  (2) whether the technique has been subject to peer review and publication;  (3) the technique's known or potential rate of error;  and (4) the level of the theory or technique's acceptance within the relevant discipline.  *Id.* at 593–94. These factors, however, are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability.  *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  Moreover, the court enjoys "substantial discretion" in deciding whether to admit or exclude relevant expert testimony.  *Mitchell v. United States,* 141 F.3d 8, 15 (1st Cir.1998) (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

To determine whether Cortes suffered MTBI as a result of the car accident, Dr. Margarida used the criteria adopted by the American Congress of Rehabilitation ("ACR").  *See* Docket No. 263 at 103. According to the ACR, an MTBI diagnosis requires loss of consciousness, posttraumatic amnesia, or neurological symptoms. *Id.* at 135.  To assess whether Cortes presented any of these conditions, Dr. Margarida completed the following process. She interviewed Cortes' mother, father, and neurologist.  *Id.* at 115.  Then, she reviewed Cortes' medical and academic records.  *Id.* Finally, Dr. Margarida interviewed Cortes and gave her a comprehensive neuropsychological evaluation.  *Id.* From this, Dr. Margarida determined that Cortes suffered a brief loss of consciousness at the moment of the accident, presented neurological symptoms when she arrived at the hospital (e.g., she was disoriented and incoherent), and experienced posttraumatic amnesia.  *Id.* at 116.  Because Cortes presented these conditions, Dr. Margarida concluded that Cortes suffered MTBI as a result of the car accident.

Defendant contends that Dr. Margarida's opinion testimony should be excluded because she used a flawed methodology to reach her conclusions. A few weeks prior to the accident, Cortes attempted suicide and was being treated by psychiatrist Dr. Maria Rodriguez. Following the accident, Cortes was also treated for months by psychologist Dr. Gloria Wehbe. At the *Daubert* hearing, Dr. Margarida acknowledged that she reached her opinion without interviewing Drs. Rodriguez and Wehbe and without examining their medical records. *See* Docket No. 263 at 22–23. Dr. Margarida also admitted that she did not interview or read the deposition of rear-passenger Israel Dominicci. *Id.* at 146. Defendant argues that this failure to consider relevant information is fatal. The court disagrees. Challenges to the methodology used by an expert witness are usually adequately addressed by cross-examination. *See United States v. Diaz*, 300 F.3d 66, 76–77 (1st Cir.2002); *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786 (noting that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). Because defendant has not shown why that cannot be the case here, the court will not exclude Dr. Margarida's testimony for failing to interview Cortes' treating physicians and rear-passenger Israel Dominicci, as well as consider their respective accounts.

Defendant also argues that Dr. Margarida's opinion testimony should be excluded because there was no evidence in the medical records that Cortes sustained head trauma, posttraumatic amnesia, or loss of consciousness and because Dr. Margarida was unaware of Cortes' movements inside the car during the accident. In response, plaintiffs maintain that head trauma is not necessary for MTBI, and that Cortes met the criteria for MTBI established by the ACR. In reviewing the reliability of Dr. Margarida's proffered expert testimony, the court's focus is on her methodologies and not on the conclusions she generated. *See Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. In this case, Dr. Margarida used a theory that is widely used and which has been published and subject to peer review. Any flaws in Dr. Margarida's opinion go to the weight of the evidence, rather than to its admissibility. Therefore, the court will not exclude Dr. Margarida's testimony for allegedly using a flawed methodology.

## IV. Conclusion

For the foregoing reasons, defendant's *motion in limine* to preclude plaintiffs from presenting at trial all evidence that Cortes suffered MTBI as a result of the car accident (Docket No. 135) is hereby **DENIED.**

**SO ORDERED.**